BUSBY v. FLORIDA &c. R. R.

1. ADVERSE POSSESSION.—A person who has been in adverse possession of land for the statutory period has a good and valid title by virtue of such adverse possession, which may be affirmatively asserted against one not protected by some disability.

2. IBID.—STATE—LIMITATIONS OF ACTIONS.—Adverse possession of land for twenty years will bar an action by the State.

3. IBID.—NONSUIT.—The payment of taxes on land for a number of years, and it not appearing that the State sets up any claim to the land, is sufficient testimony to submit to the jury the question that the State has parted with her title, and a nonsuit was properly refused.

Before EARLE, J., Lexington, February, 1895.   Affirmed.

Action by J. C. Busby against the Florida Central and Peninsular Railroad Company. Judgment for plaintiff. Defendant appeals.

*Messrs. C. J. C. Hutson* and *Lyles & Muller*, for appellants.

*Messrs. R. W. Shand* and *Andrew Crawford*, contra.

Oct. 10, 1895.  The opinion of the Court was delivered by

MR. CHIEF JUSTICE McIVER.   This was an action to recover damages caused by sparks of fire emitted from a locomotive engine of the defendant company, which ignited combustible material on defendant's right of way, from which the fire spread over the lands of plaintiff.   In defendant's answer, the allegation that the lands over which the fire spread belonged to the plaintiff, was denied.   This put the plaintiff to the proof of his title, for which purpose he relied upon adverse possession for the space of fifteen years, but there was no evidence that the land had ever been granted by the State.   It was, however, stated at the hearing, that there was evidence that the plaintiff had been paying tax on the land during the period of his adverse possession; and, by consent, the "Case" was amended so as to embrace the testimony to that effect.   At the close of plaintiff's testimony, a motion for a nonsuit was made, upon the ground that the plaintiff had failed to show any title in himself to the land.   His Honor, Judge Earle, ruled that, "where one shows ten years adverse possession, whether under color of title or not, shows actual occupancy for ten

years, holding the land as his own adversely, that he has
such title, being shown by that proof, as will give him
standing in Court." Accordingly the motion was refused,
and at the close of the testimony adduced on both sides, the
jury were instructed, as to the question of title, in accordance
with the ruling on the motion for a nonsuit. A verdict
having been rendered in favor of the plaintiff, and judgment
having been entered thereon, the defendant appealed upon
two grounds, set out in the record, which, substantially,
make the single question, whether there was error in the
ruling as to the question of title. The precise question, as
we understand it, intended to be presented by this appeal
is, whether a party, whose claim rests upon an assertion of
title to real estate, can establish such claim by proof of ad-
verse possession for the statutory period, without first show-
ing that the title to the real estate in question has passed
out of the State.

In the determination of this question two inquiries are
presented: First, whether adverse possession of real estate
for the statutory period confers a positive, affirmative title,
or simply operates as a bar to the claim of any person seek-
ing to dispossess the person in possession. It is not
to be denied that, at one time, it seemed to be sup-
posed that adverse possession operated simply as a
bar to an action to recover possession of the land. Accord-
ingly we find in the books the expression, that the statute
of limitations may be used as a shield of defense, not as a
weapon of offense. But, on the other hand, we find in our
own cases, which will be hereinafter referred to, *dicta*, at
least, which plainly recognize the doctrine, that adverse
possession of real estate for the requisite period does confer
positive title, which may be asserted affirmatively. As is
said by Mr. Justice Miller, in *Campbell* v. *Holt*, 115 U. S.
Rep., at pages 622–3: "By the long and undisturbed posses-
sion of tangible property, real or personal, one may acquire
a title to it, or ownership superior in law to that of another
who may be able to prove an antecedent and, at one time,

paramount title. * * * Mr. Angell, in his work on Limitation of Actions, says that the word limitation is used in reference to the time which is prescribed by the authority of the law during which a title may be acquired to property by virtue of a simple adverse possession and enjoyment, or the time, at the end of which no action at law or suit in equity can be maintained. Prescription, therefore (he says), is of two kinds, that is, it is either an instrument for the acquisition of property, or an instrument of an exemption only from the servitude of judicial process. * * * The English and American statutes of limitations have, in many cases, the same effect, and if there is any conflict of decisions on the subject, the weight of authority is in favor of the proposition that, where one has had the peaceable, undisturbed, open possession of real or personal property, with an assertion of his ownership for the period which, under the law, would bar an action for its recovery by the real owner, the former has acquired a good title, a title superior to that of the latter, whose neglect to avail himself of his legal rights has lost him his title. This doctrine has been repeatedly asserted in this Court (citing the cases). It is the doctrine of the English Courts, and has been often asserted in the highest courts of this State of the Union." This doctrine is expressly recognized in *Cantey* v. *Platt*, 2 McC., 260, in which Judge Huger, in delivering the opinion of the Court, says: "To enable a plaintiff to succeed in his statutory claims to land, he must prove that he had possession of the land the full time required by the statute law," going on to say that such possession must be adverse, and the extent of it shown. That case is cited with approval by O'Neall, J., in *King* v. *Smith*, Rice, at page 14, where the same language is quoted. The same doctrine is recognized in *McLeod* v. *Rogers*, 2 Rich., at page 23; *Turpin* v. *Brannan*, 3 McC., where Nott, J., at page 267, says: "After the quiet enjoyment of land for five (now ten) years, the law presumes a title in the occupant which may have been lost by accident. *The possession is substituted in place of*

*title*" (italics ours).   *Allen* v. *Johnson*, 2 McM., 495; *Coug-don* v. *Morgan*, 14 S. C., 587; *Bowen* v. *Team*, 6 Rich., where, at page 301, O'Neall, J., uses this language: "I hold that ten years adverse possession of land is a conveyance of the fee resting in the owner thus barred. * * * In *Wagner* v. *Aitorm*, Rice, 105, Brown was the grantee under whom the plaintiffs claimed; they could not connect themselves by conveyances with him, but they proved ten years adverse possession under color of title in their ancestor.   It was said by the Judge who tried the cause, in his charge to the jury, 'that the true view of the case was to regard Wagner as having entered under Carter's and Westbury's conveyances, who, for aught that certainly appeared, might be strangers to Brown, but who had undertaken to convey his title, and, under a title so derived, if he had an actual adverse possession of a part of the grant for more than five years before 1812, this was equivalent to the most perfect conveyance of the Brown grant to him against all persons not laboring under some disability.'   By the second ground of appeal this ruling was drawn directly in question.   The Court of Appeals unanimously sanctioned it.   In *Williams* v. *McCaliby*, Cheves, 200, the same ruling was made to carry to Lacy the oldest grant to Lowndes, and which was necessary to entitle the plaintiffs to recover.   It was neither questioned by the appeal nor by the Court.   On authority, therefore, I suppose I might say the point was settled.   But test it by reason, the same result must follow: A is in the possession under color of title of the land of B for the statutory period, B cannot recover it against him or anybody else.   Why?   His title is gone, is the answer.   Where is it?   It must be in the possession; for there is no other person who can have the right of possessing and enjoying the land.   Again, land is granted to B; C, a stranger to him, comes into the actual possession under a conveyance from D, holds possession for more than ten years, and then E intrudes on him, and he brings trespass to try titles.   Does not every lawyer know that the grant to B, D's conveyance to C, and

ten years possession in him, give, so far as title is concerned, a right to recover?   That being so, must he not by his possession acquire, in legal contemplation, the title of B?   Can there be any better conveyance?"   The foregoing, while perhaps not distinctly deciding the point, abundantly show that the drift of judicial opinion is very decidedly towards the view that a person who has been in adverse possession of land for the statutory period, thereby acquired a good and valid title, which may be affirmatively asserted against one not protected by some disability; that certainly was the opinion of those eminent judges, the late Mr. Justice Miller and the late Chief Justice O'Neall, and we think their view is fully sustained by reason.   But, in addition to this, we think that the point has been directly decided in *Harrelson* v. *Sarvis*, 39 S. C., 14, in which Mr. Justice McGowan uses these words: "It is certainly true that in an action for the recovery of land the plaintiff must recover, if at all, upon the strength of his own title, and not the weakness of that of his adversary.   But it is not necessary that, under all circumstances, there should be an unbroken chain of paper title back to the grant.   The statute of limitations has a double aspect; besides affording a shield of defense, it may, under certain circumstances, give title capable of being asserted actively;" and on the next page it is held that an adverse possessson for twelve years entitled the plaintiff to recover the land of which she had such possession.   This doctrine is explicitly recognized in the very recent case of *Mays* v. *Railroad Company*, 40 S. C., 517.

The next inquiry which is presented is, whether it is necessary, in order to establish a title to real estate acquired by adverse possession, to show that the title to such real estate has passed out of the State; and, if so, whether in this case there was any evidence tending to show that fact; for, if so, then there was no error in refusing the motion for a nonsuit, and no error in charging the jury in accordance with the ruling on the motion for nonsuit.   As was said by Mr. Justice McGowan, in the case

of the *State* v. *Pinckney*, 22 S. C., at page 502: "Our doctrine is, that the State succeeded at the Revolution to all the rights of the British Crown, one of which, as Lord Coke tells us, was, 'that all lands are holden mediately or immediately of the King.' The State, with us, is the common source of title, and retains it indefinitely, it may be, until it passes from her in the only manner known to the law, by presumption, either express or implied, or hereafter possibly by operation of the new statute of limitations." Hence, when one undertook to establish a title to real estate by adverse possession, it was necessary to show that title to such real estate had passed out of the State; inasmuch as, prior to the Code, the statute of limitations could not be pleaded against the State, the maxim, *nullum tempus occurrit regi*, being recognized here. Now, however, since the possession provisions of the Code have been enacted, we see no reason why a party, who has been in adverse possession of land for the requisite period, may not acquire a title against the State. But, be that as it may, there was no evidence in this case of adverse possession by the plaintiff for a period of twenty years, sufficiently long to bar an action by the State, as the evidence only shows a possession for fifteen years. We must, therefore, inquire whether there was any other evidence tending to show that the State had parted with its title to the land claimed by plaintiff; for if there was *any* evidence tending to show that fact, that would, under the well settled rule, not only justify but require a refusal of the motion for a nonsuit. Now, the fact that the plaintiff had been paying taxes on the land for a number of years, as appears by the amendment made to the "Case" at the hearing by consent, and the further fact that it did not appear that the State was setting up any claim to this land, do afford *some* evidence—whether sufficient or not, it was for the jury to determine—that the State had parted with its title to the land, for certainly we would not be justified in assuming that the State would collect taxes on its own land.

The judgment of this Court is, that the judgment of the Circuit Court be affirmed.