528 S.E.2d 408

**STATE of South Carolina, ex rel. Charles M. CONDON
as attorney general of South Carolina, Appellant,**

v.

**CITY OF COLUMBIA, Respondent.**

**No. 25065.**

Supreme Court of South Carolina.

Heard Nov. 3, 1999.
Decided Feb. 14, 2000.

10 

Attorney General Charles M. Condon, Senior Assistant Attorney General Nathan Kaminski, Jr., Assistant Attorney General Christie Newman Barrett, all of Columbia, and S. Jahue Moore of Kirkland Wilson Moore Allen & Taylor, West Columbia, for appellant.

James S. Meggs of Columbia, for respondent.

WALLER, Justice:

Appellant (the State) brought a lawsuit against respondent (City) in 1996, challenging a 1989 "strip" or "shoestring" annexation that led to the annexation of portions of Lexington County. A circuit judge granted City's summary judgment motion and dismissed the case without addressing the legitimacy of the strip annexation. Thus, that issue is not before us.[1] The State appeals. We affirm in part and reverse in part.

---

1. The 1989 strip annexation and the annexations it spawned have been before the appellate courts five times. Those cases were decided

## FACTS

City purchased and annexed a strip of land about five feet wide and one mile long from Richtex Corporation in December 1989. The strip begins at the northern right-of-way of Interstate 20 at the Broad River and runs north, sometimes underwater, along the eastern bank of the river. City, asserting the strip of land established contiguity, annexed about 400 acres of land owned by Columbia Bible College (now Columbia International University), located north of City's limits.

The university property created contiguity with 2,829 acres of state-owned property. At the urging of City's mayor, the State Budget and Control Board agreed to request annexation of the state-owned property. City annexed the property in December 1989. City then annexed adjoining commercial properties in the Irmo and St. Andrews areas of Lexington County, including Columbiana Center mall near Irmo.

After questions about the validity of the strip annexation arose in early 1990, the State Budget and Control Board filed a notice of intention to contest it and brought a declaratory judgment action challenging it shortly thereafter. On appeal, we held that the State lacked standing to challenge the strip annexation in a declaratory judgment action because it did not own the five-foot strip. However, we remanded the case for the State to amend its complaint as necessary to challenge the annexation of state-owned property. *State by State Budget and Control Board v. City of Columbia,* 308 S.C. 487, 419 S.E.2d 229 (1992). Following remand, all parties agreed in August 1992 to a voluntary dismissal of the case with prejudice.

In 1996, the State stepped up to the plate again. The State brought a lawsuit attacking the use of the strip method of annexation in quo warranto and declaratory judgment actions. The State further claimed the annexation was unlawful be-

primarily on the ground of standing, and no opinion has addressed the legitimacy of the strip annexation. *City of Columbia v. Town of Irmo,* 316 S.C. 193, 447 S.E.2d 855 (1994); *State by State Budget and Control Board v. City of Columbia,* 308 S.C. 487, 419 S.E.2d 229 (1992); *City of Columbia v. Town of Irmo,* 308 S.C. 490, 419 S.E.2d 231 (1992); *County of Lexington v. City of Columbia,* 303 S.C. 300, 400 S.E.2d 146 (1991); *Quinn v. City of Columbia,* 303 S.C. 405, 401 S.E.2d 165 (1991) (per curiam).

cause the property description in the 1989 annexation ordinance omitted the Interstate 20 right-of-way, creating a gap in the five-foot strip of land that destroyed contiguity. Those claims are the same ones the State alleged in its complaint in 1990.

The circuit judge granted summary judgment to City on several grounds, but we need address only two. The judge ruled the State's 1996 lawsuit is barred because (1) the State lacks standing to bring the actions under the circumstances of this case and (2) the lawsuit is not timely under the statute of limitations contained in S.C.Code Ann. § 5–3–270 (1976). The judge did not rule on the merits of the State's claims, finding those raised genuine issues of material fact that would make summary judgment improper if the State were able to pursue the case.

## ISSUES

1. Did the circuit judge err in ruling the State does not have standing to bring a quo warranto action challenging a municipality's annexation of property the State does not own?

2. If the State has standing to bring a quo warranto action, did the circuit judge err in ruling that the statute of limitations contained in S.C.Code Ann. § 5–3–270 (1976) bars the State's lawsuit?

## STANDARD OF REVIEW

■ This case raises two novel questions of law. We are free to decide these questions of law with no particular deference to the lower court. *See* S.C. Const. art. V, §§ 5 and 9; S.C.Code Ann. §§ 14–3–320 and –330 (1976 & Supp.1999); S.C.Code Ann. § 14–8–200 (Supp.1999) (granting Supreme Court and Court of Appeals the jurisdiction to correct errors of law in both law and equity actions); *I'On v. Town of Mt. Pleasant,* 338 S.C. 406, 526 S.E.2d 716 (2000).

## DISCUSSION

### 1. QUO WARRANTO ACTION

■ The State argues the circuit judge erred in ruling it did not have standing to bring a quo warranto action challeng-

ing a municipality's annexation of property the State does not own. We agree.

When located within an annexed area, the State as a property owner, an individual property owner, or a registered qualified elector has sufficient standing to challenge an annexation. A party may ask the court to declare his or her statutory or proprietary rights affected by the annexation in a declaratory judgment action. *State by State Budget and Control Board, supra; Dalton v. Town Council of Mt. Pleasant*, 241 S.C. 546, 129 S.E.2d 523 (1963); cases cited in footnote 1; 1 *Antieau on Local Government Law* § 3 .10[4] (2d ed.1999); 2A *McQuillin Municipal Corporations* § 7.43 (3d. ed.1996). The issue before us today is whether the State, when acting in the public interest, may bring a quo warranto action challenging the annexation of property it does *not* own.

A quo warranto action is rooted in the common law writ designed to test whether a person exercising power is legally entitled to do so. It is an ancient prerogative right through which the state acts to protect itself and the good of the public generally, and may be used to test the legality of exercise of powers by municipal corporations. 74 C.J.S. *Quo Warranto* §§ 1–2 (1951); *Black's Law Dictionary* 1256–57 (1990). The attorney general may bring quo warranto actions in the name of the State. *See* S.C.Code Ann. §§ 15–63–10 to – 210 (1976).

We hold that the State, provided it is acting in the public interest, has standing to bring a quo warranto action challenging the annexation of property it does not own. *See Central Realty Corp. v. Allison*, 218 S.C. 435, 449, 63 S.E.2d 153, 159 (1951) (under appropriate circumstances, validity of municipal ordinances may be tested by certiorari, declaratory judgment proceedings, habeas corpus, injunction, mandamus, prohibition, and quo warranto); *State v. City Council of Charleston*, 8 S.C.L. (1 Mill Const.) 36 (1817) (concluding attorney general may bring quo warranto action against City of Charleston on behalf of the State); 1 *Antieau on Local Government Law* § 3.10[2] (validity of municipal annexation may be attacked by state, which usually does so by quo warranto action, absent statute providing otherwise); 17 *McQuillin Municipal Corporations* § 50.10 (3d ed.1993) (same); 65 Am.Jur.2d *Quo War-*

*ranto* § 48 (1972) (same); 74 C.J.S. *Quo Warranto* §§ 26–27 (attorney general usually may bring quo warranto action on behalf of state). In fact, some courts have reasoned that a quo warranto action brought by the state is a desirable or required method of challenging an annexation in order to avoid numerous individual suits. *State ex rel. Earhart v. City of Bristol,* 970 S.W.2d 948, 952 (Tenn.1998); *Alexander Oil Co. v. City of Seguin,* 825 S.W.2d 434, 437 (Tex.1991).

We assume, without deciding, that the State was acting in the public interest in bringing the 1996 action to determine the validity of the unusual strip annexation. It is not necessary to decide that issue because we find the matter discussed below dispositive. Accordingly, we reverse the circuit judge's ruling that the State lacks standing to bring a quo warranto action.

### 2. ANNEXATION STATUTE OF LIMITATIONS

■ S.C.Code Ann. § 5–3–270 (1976) provides:

When the limits of a city or town shall be ordered extended no contest thereabout shall be allowed unless the person interested therein shall, within sixty days after the result has been published or declared, file with both the clerk of the city or town and with the clerk of court of the county in which the city or town is situate, a notice of his intention to contest such extension, nor unless, within ninety days from the time the result has been published or declared an action shall be begun and the original summons and complaint filed with the clerk of court of the county in which the city or town is situate.

We hold that the ninety-day deadline is the statute of limitations that usually applies in annexation matters because a more specific statute of limitations prevails over any general one. *See State v. Life Ins. Co. of Georgia,* 254 S.C. 286, 175 S.E.2d 203 (1970) (court will apply a more specific statute of limitations instead of a general one; thus, State's lawsuit to recover back taxes was governed by specific ten-year limitations period for tax matters, not ordinary six-year limitations period); *cf. Atlas Food Systems and Servs., Inc. v. Crane,* 319 S.C. 556, 462 S.E.2d 858 (1995) (general rule of statutory construction is that a specific statutory provision prevails over a more general one).

■ The critical question in this case, however, is whether section 5–3–270 applies when the State is the party challenging an annexation proceeding. We conclude that it does, and consequently affirm the circuit judge's ruling that the State's 1996 lawsuit is barred as untimely because it was not filed within the ninety-day deadline. We will address three arguments in which the State contends the circuit judge erred in applying section 5–3–270 to it in this case.[2]

### A. NULLUM TEMPUS DOCTRINE

■ The State contends a quo warranto action generally is not barred by any statute of limitations, relying on the common law doctrine of *nullum tempus occurrit regi* ("time does not run against the king"). Under the nullum tempus doctrine, statutes of limitation do not run against the sovereign unless the Legislature specifically provides otherwise. The State argues nullum tempus allows its quo warranto action to proceed—despite section 5–3–270—because quo warranto is not mentioned in the statutes of limitation contained in Chapter 3 of Title 15. We find the State's argument unpersuasive for several reasons.

First, the Legislature abandoned the nullum tempus doctrine long ago by making the various statutes of limitation contained in Chapter 3 of Title 15 applicable to the State. In 1870, the Legislature provided for the first time that "[t]he limitations prescribed in this chapter [establishing statutes of limitation for various types of actions] shall apply to actions brought in the name of the State, or for its benefit, in the same manner as to actions by private parties." Act No. 300, 14 *Statutes at Large* § 121 at 448 (1870). That language has remained virtually unchanged for nearly 130 years and is

---

2. This case is in an unusual posture due to the State's 1990 lawsuit and our decision in *State by State Budget and Control Board, supra.* In that case, we reversed and remanded the 1990 case to allow the State to amend its complaint as necessary to challenge the annexation of state-owned property. Following remand, the State had one year to amend its complaint even though the ninety-day deadline contained in section 5–3–270 had passed. *See* S.C.Code Ann. § 15–3–90 (1976). The State did not amend its complaint within one year. Consequently, section 15–3–90 has no impact on this case and we must focus our analysis on the original statute of limitations, section 5–3–270.

presently codified in S.C.Code Ann. § 15–3–620 (1976).[3] *See also* S.C.Code Ann. § 15–3–310 (1976) (establishing statute of limitations for State to bring action relating to real property, a provision also enacted for the first time in 1870). This Court has recognized that the nullum tempus doctrine prevailed in South Carolina until the Legislature decided otherwise. *Busby v. Railroad Co.*, 45 S.C. 312, 318, 23 S.E. 50, 51 (1895); *Heyward v. Farmers' Mining Co.*, 42 S.C. 138, 148, 19 S.E. 963, 970 (1894); *State v. Pinckney*, 22 S.C. 484, 503–05 (1885); *State v. Pacific Guano Co.*, 22 S.C. 50, 83 (1884).

Consequently, the various statutes of limitation contained in Chapter 3 of Title 15 undoubtedly apply to the State. *State ex rel. Highway Dep't v. Piedmont & N.Ry. Co.*, 186 S.C. 49, 59, 194 S.E. 631, 635 (1938) (affirming trial court's decision that State's action to recover bridge construction costs was barred by statute of limitations because predecessor of section 15–3–620 made statute contained in Chapter 3 of Title 15 applicable to State); *accord State ex rel. Smith v. Kermit Lumber & Pressure Treating Co.*, 200 W.Va. 221, 488 S.E.2d 901, 907–09 (1997) (statute expressly declaring that every statute of limitation, unless otherwise expressly provided, shall apply to state abrogates nullum tempus doctrine and thereby makes statutes of limitations applicable to state); *People ex rel. Dep't of Public Aid v. Dent*, 244 Ill.App.3d 380, 185 Ill.Dec. 242, 614 N.E.2d 376 (1993) (where statute of limitations expressly includes state or other governmental agencies, governmental limitations immunity does not apply).

Absent statutory guidance to the contrary, we conclude the Legislature did not intend for the nullum tempus doctrine to survive with regard to section 5–3–270 simply because it is contained in Title 5 instead of Title 15. *See Fishburne v. Fishburne*, 171 S.C. 408, 172 S.E. 426 (1934) (different statutes on the same subject, though enacted at different times and not referring to each other, must be construed together as one system and as explanatory of each other); *Historic Charleston Foundation v. Krawcheck*, 313 S.C. 500, 443 S.E.2d 401 (Ct.

---

**3.** Section 15–3–620 also contains a provision relating to claims for charges for care received by patients or trainees at certain state facilities. The Legislature added that provision, which is not pertinent in this case, in 1962. *See* S.C.Code Ann. § 10–150 (1962) (former Code provision).

App.1994) (statutes relating to the same subject should be construed together in order to produce a harmonious body of legislation).

Second, the abolition of the common law doctrine of sovereign immunity signaled the end of the common law doctrine of nullum tempus. Thus, the nullum tempus doctrine provides no support for interpreting the annexation statute of limitations to apply only to private individuals.

No statute or constitutional provision in South Carolina contains the nullum tempus doctrine.[4]

> The rule of nullum tempus occurrit regi has existed as an element of the English law from a very early period.... The common law fixed no time as to the bringing of actions. Limitations derive their authority from statutes. The king was held never to be included, unless expressly named. No laches was imputable to him. These exemptions were founded upon considerations of public policy. It was deemed important that, while the sovereign was engrossed by the cares and duties of his office, the public should not suffer by the negligence of his servants.... When the colonies achieved their independence, each one took these prerogatives, which had belonged to the crown; and when the national Constitution was adopted, they were imparted to the new government as incidents of the sovereignty thus created.

*United States v. Thompson*, 98 U.S. 486, 490, 25 L.Ed. 194, 195 (1878). "Nullum tempus originated as one of the royal prerogatives, justified on the ground that the king was too busy looking after the welfare of his subjects to sue." *New Jersey Educ. Facilities Auth. v. Gruzen Partnership*, 125 N.J. 66, 592 A.2d 559, 563 (1991) (prospectively abolishing the doctrine with respect to the State and its agencies) (internal quotes omitted).

American courts embracing the doctrine have tended to avoid the "busy king" rationale. Instead, they reason it is needed to protect society from the inefficiencies of public

---

4. The constitution provides that "[t]he General Assembly may direct, by law, in what manner claims *against* the State may be established and adjusted." S.C. Const. art. X, § 10 and art. XVII, § 2 (emphasis added).

servants or, as Justice Story expressed it in 1821, to preserve "the public rights, revenues, and property from injury and loss, by the negligence of public officers." *Shootman v. Dep't of Transp.*, 926 P.2d 1200, 1203 (Colo.1996) (en banc) (quoting *Guaranty Trust Co. v. United States*, 304 U.S. 126, 132, 58 S.Ct. 785, 788, 82 L.Ed. 1224 (1938)); *New Jersey Educ. Facilities Auth.*, 592 A.2d at 564.

We find persuasive the reasoning of the New Jersey and Colorado courts, which concluded the nullum tempus doctrine is but an aspect of sovereign immunity. The abolition of sovereign immunity in those states, along with prior decisions undermining the doctrine, swept away its remaining tenuous underpinnings. *Shootman*, 926 P.2d at 1203–05; *New Jersey Educ. Facilities Auth.*, 592 A.2d at 561. Similarly, this Court has abolished sovereign immunity as it applies to the State and all local subdivisions of government. *McCall by Andrews v. Batson*, 285 S.C. 243, 329 S.E.2d 741 (1985). That decision, combined with the Legislature's clear intent since 1870 to have statutes of limitation contained in Chapter 3 of Title 15 apply to the State, swept away the underpinnings of the nullum tempus doctrine in South Carolina.

 Third, we find that applying the annexation statute of limitations to the State as well as private individuals is proper because such statutes are designed to promote justice by forcing parties to pursue a case in a timely manner. Parties should act before memories dim, evidence grows stale or becomes nonexistent, or other people act in reliance on what they believe is a settled state of public affairs.

> Statutes of limitations embody important public policy considerations in that they stimulate activity, punish negligence, and promote repose by giving security and stability to human affairs. One purpose of a statute of limitations is to relieve the courts of the burden of trying stale claims when a plaintiff has slept on his rights. Another purpose . . . is to protect potential defendants from protracted fear of litigation.

*Moates v. Bobb*, 322 S.C. 172, 176, 470 S.E.2d 402, 404 (Ct.App.1996) (citations and internal quotes omitted). These principles ring true regardless of whether the party is a private individual, a corporation, or a governmental entity.

"Long delays by the government in instituting suit, of course, cause harm to the defendant and are in the interest of no one." *Shootman,* 926 P.2d at 1206.

Furthermore, this Court has recognized that these principles apply in annexation matters. The Court has held that those who wish to challenge the annexation procedure in any way, even if the challenge relates to an election petition preceding the annexation, must comply with the notice and time limits contained in section 5–3–270.

> The legislature is the primary judge as to whether the time allowed by a statute of limitations is reasonable. Although the determination of the legislature is reviewable by the courts, the courts will not inquire into the wisdom of the legislative decision in establishing the period of legal bar, unless the time allowed is manifestly so insufficient that the statute becomes a denial of justice. . . .
>
> In our opinion, the time limitations fixed by [section 5–3–270] are neither unreasonable nor arbitrary. It was doubtless in the mind of the general assembly that annexation issues should be decided without undue delay, so that the town officials would be advised whether the affected area would become a part of the municipality. Many questions connected with municipal government, including that of taxation, would need to be known with reasonable promptness.

*Hite v. Town of West Columbia,* 220 S.C. 59, 65, 66 S.E.2d 427, 429–30 (1951).

The State's reliance in a portion of its argument on *Town of Forest Acres v. Town of Forest Lake,* 226 S.C. 349, 85 S.E.2d 192 (1954), is misplaced. In that case, the Court nullified Forest Lake's annexation proceeding after concluding that a method-of-annexation statute that obviously could apply only in Richland County violated the constitutional prohibition against special laws. After resolving the case on the constitutional ground, the Court in dicta stated it did "not think this section [time limits contained in the predecessor statute of Section 5–3–270] is applicable." *Town of Forest Acres,* 226 S.C. at 359, 85 S.E.2d at 196. The Court did not otherwise interpret the time limit or provide any guidance on its applicability in future cases.

■ Accordingly, we hold that the State, like any private individual, must strictly comply with time limits set forth in section 5–3–270. Our conclusion is consistent with decisions reached by other courts that have considered this issue. *People v. City of Los Angeles,* 93 Cal.App. 532, 269 P. 934 (1928) (necessary implication of language and purpose of three-month statute of limitations in annexation matters barred state's untimely quo warranto action); *People ex rel. Northfield Park Dist. v. Glenview Park Dist.,* 222 Ill.App.3d 35, 164 Ill.Dec. 328, 582 N.E.2d 1272, 1279–80 (1991) (holding district's quo warranto action was barred by one-year statute of limitations in annexation matter); *State ex rel. Kelley Properties, Inc. v. City of Town and Country,* 797 S.W.2d 519, 521 (Mo.Ct.App.1990) (holding quo warranto action in annexation matter was barred by three-year statute of limitations).

## B. TEN–YEAR STATUTE OF LIMITATIONS

■ A quo warranto action is not provided for in the statutes of limitation contained in Chapter 3 of Title 15. Consequently, the State contends that if any statute of limitations applies to such an action, it is the ten-year limit contained S.C.Code Ann. § 15–3–600 (1976) ("[a]n action for relief not provided for in this chapter must be commenced within ten years after the cause of action shall have accrued"). We disagree.

We hold that the ten-year statute of limitations is inapplicable because section 5–3–270 specifically governs annexation proceedings. *See State v. Life Ins. Co. of Georgia, supra* (court will apply a more specific statute of limitations instead of a general one); *Atlas Food Systems and Servs., Inc. v. Crane, supra.*

## C. CAPACITY OF STATE

■ The State argues it was acting only in its capacity as a property owner in the 1990 lawsuit, and thus was barred from amending its complaint to include a quo warranto action to challenge City's annexation of the five-foot strip by our decision in *State by State Budget and Control Board, supra.* The 1996 lawsuit is permissible because it now is acting in its capacity as the sovereign, the State contends. We find the

distinction unpersuasive. The State, acting in its capacity as a property owner, a sovereign, or both, could have amended its original complaint as needed. Instead, the State chose to consent to a voluntary dismissal of the 1990 case with prejudice.

### CONCLUSION

We reverse the circuit judge's ruling that the State lacks standing to bring a quo warranto action. The State, provided it is acting in the public interest, has standing to bring a quo warranto action challenging a municipality's annexation of property the State does not own. We affirm the circuit judge's grant of summary judgment to City on the ground that the State's 1996 lawsuit is barred by section 5–3–270, the statute of limitations in annexation proceedings. The State, like any private individual, must comply with time limits set forth in the statute. We find it unnecessary to address the State's remaining arguments. *See Anderson v. South Carolina Dep't of Highways and Pub. Transp.*, 322 S.C. 417, 420, 472 S.E.2d 253, 254 (1996) ("appellate court will find it unnecessary to address all the grounds appealed where one requires affirmance").

AFFIRMED IN PART; REVERSED IN PART.

FINNEY, C.J., TOAL and BURNETT, JJ., and Acting Associate Justice C. TOLBERT GOOLSBY, Jr., concur.