560 S.E.2d 632

**Alyce B. McINNIS, Appellant,**

v.

**Estate of E.C. McINNIS, Jr., Respondent.**

**No. 3439.**

Court of Appeals of South Carolina.

Heard Nov. 7, 2001.

Decided Jan. 28, 2002.

Rehearing Denied March 20, 2002.

Elizabeth R. Munnerlyn, of Rogers & Munnerlyn, of Bennettsville, for appellant.

J. Munford Scott, Jr., of Florence and Wade R. Crow, of Bennettsville, for respondent.

HEARN, C.J.

Alyce McInnis appeals the denial of her claim against her husband's estate. She asserts she was entitled to thirty percent of the cash remaining in his estate after the payment of debts in addition to the funds she received from two Individual Retirement Accounts (IRAs). We reverse.

## FACTS/PROCEDURAL HISTORY

E.C. McInnis (Husband) and Alyce McInnis (Wife) married in 1988. Prior to their marriage, Husband opened two IRAs. He named his children, Duncan Allen McInnis and Terry Alice

McInnis Hommel, as his beneficiaries and listed his grandchildren, Duncan Allen McInnis, Jr. and Jean Kaye McInnis, as contingent beneficiaries.

In 1992, Husband executed a will directing in Item II that "I give, devise, and bequeath any IRA Account which I might own at the time of my death to my wife, Alyce Braak McInnis." The will also directed in Item IX that "After the payment of all my just and lawful debts, I give, devise and bequeath any cash which I might own at the time of my death as follows: Thirty (30%) Per Cent [sic] to my wife, Alyce Braak McInnis...."

Husband died in 1995, never having changed the beneficiary designation on his IRAs. Following his death, the named beneficiaries and the contingent beneficiaries, as represented by a guardian, signed documents disclaiming their interests in the IRAs. The IRA custodian then rolled over the proceeds from Husband's accounts to Wife's IRA.[1]

Duncan McInnis filed two claims against the estate in the amounts of $22,680 and $29,714, seeking reimbursement for money he advanced to cover the estate's expenses and taxes. Jon McInnis claimed $46,006 for recovery under a partnership agreement between himself and Husband. Wife filed a claim for $15,502.02 she asserted she was due under Item IX of the will.

The probate court initially ruled on only Duncan McInnis's and Wife's claims. The probate court allowed Duncan McInnis's claims but denied Wife's claim, reasoning that after allowing Duncan McInnis's claims, there was no cash left to distribute to Wife under Item IX of the will. Alyce McInnis appealed both the denial of her claim and the allowance of Duncan McInnis's claims.

The circuit court issued an order remanding the matter to the probate court for additional findings of fact about the E.C. and Jon McInnis partnership. On remand, the probate court

---

1. The estate has not contested Wife's receipt of the IRA proceeds. In fact, the estate's attorney wrote a letter requesting a private letter ruling from the South Carolina Tax Commission shortly after the disclaimers were given which read in part, "That Alyce Braak McInnis (wife of deceased) is entitled to the Decedent's IRA pursuant to the Code and the Will of the deceased."

found that the partnership contained insufficient assets to reimburse Duncan McInnis, and therefore, he was entitled to repayment from Husband's estate. Once again, it denied Wife's claim. Ruling for the first time on Jon McInnis's claim, the probate court found that the estate owed him for money withdrawn from the partnership by Husband exceeding the amount he was due under the partnership agreement. Wife challenged these findings to the circuit court.

The circuit court ruled that the named beneficiaries' disclaimers of their interests in the IRAs caused the IRA proceeds to become property of the estate to be distributed as cash under Item IX of the will. It then denied Duncan McInnis's claims and Jon McInnis's claim because there was insufficient evidence in the record to allow recovery of these claims. The circuit court also held Wife was entitled to $36,438.86 under Item IX of the will.[2] However, it denied Wife's claim because it found that her bequest was satisfied since the money disbursed to her from the IRAs was a cash distribution in excess of the amount she was entitled to receive under the will. This appeal followed.

## STANDARD OF REVIEW

A claim for money due from an estate sounds in law as does an action to construe a will. *See Howard v. Mutz,* 315 S.C. 356, 362, 434 S.E.2d 254, 258 (1993) (finding claim for money against an estate is at law); *NationsBank of S.C. v. Greenwood,* 321 S.C. 386, 392, 468 S.E.2d 658, 662 (Ct.App. 1996) (stating will construction is an action at law). In an action at law tried without a jury, the trial judge's factual findings will not be disturbed on appeal unless wholly unsupported by the evidence or controlled by an error of law. *Gordon v. Colonial Ins. Co.,* 342 S.C. 152, 155, 536 S.E.2d 376, 378 (Ct.App.2000). However, this court may correct errors of law without deference to the lower court. *State ex rel Condon v. City of Columbia,* 339 S.C. 8, 13, 528 S.E.2d 408, 410 (2000).

---

2. The circuit court reached this figure by calculating thirty percent of what he believed to be the cash in the estate, including the IRA proceeds.

## LAW/ANALYSIS

On appeal, Wife asserts the circuit court wrongly denied her claim because she was entitled to thirty percent of the cash in the estate in addition to the proceeds of the IRAs. She contends the circuit court erred in treating the IRA proceeds as cash to be distributed under Item IX of the will and in characterizing her receipt of those proceeds as a satisfaction of the bequest to her in Item IX. We agree.

Wife contests the circuit court's finding that "the named beneficiaries of both IRA accounts disclaimed their interest as named beneficiaries under those accounts in order that the proceeds could be payable to the Estate and thus become cash of the Estate." This finding appears to treat the disclaimers as conditional. To be valid, a disclaimer must be unconditional. 26 U.S.C.A. § 2518 (1989) (providing "as a result of such refusal, the interest passes without any direction on the part of the person making the disclaimer. . . ."); S.C.Code Ann. § 62–2–801(a) (Supp.2000) (allowing that a disclaimer made in compliance with federal tax requirements is effective under South Carolina law). In determining whether a disclaimer is conditional, we look to the language of the disclaimer instrument. *Estate of Holden v. Holden*, 343 S.C. 267, 275–76, 539 S.E.2d 703, 708 (2000). Here, the disclaimers are unequivocal and do not contain any qualifying language or manifest any intent to retain control over the disposition of the IRAs. We find that the disclaimers signed by the named and contingent beneficiaries are unconditional and the circuit court erred in finding that they were made so that the proceeds would pass to the estate.

Having concluded the disclaimers were unconditional, we must now determine what effect the disclaimers had on the IRA proceeds. By statute, if a person disclaims an interest in property, that interest "shall be deemed never to have been transferred to the disclaimant." S.C.Code Ann. § 62–2–801(a). The disclaimed interest then "shall be transferred (or fail to be transferred, as the case may be) as if the disclaimant had predeceased the date of effectiveness of the transfer of the interest; the disclaimer shall relate back to the date of effectiveness for all purposes[,]" unless the original transferor has provided an alternate disposition. S.C.Code

Ann. § 62-2-801(d) (1987). Section 801 also guides the determination of the date of effectiveness of a disclaimed interest, providing:

The date of effectiveness of the transfer of the disclaimed interest is (1) as to transfers by intestacy, wrongful death, elective share, forced share, homestead allowance, exempt property allowance, devise and bequest, the date of death of the decedent transferor ... (2) as to all other transfers, the date of effectiveness of the instrument, contract, or act of transfer.

S.C.Code Ann § 62-2-801(e) (1987). An interest in an IRA falls under section 801(e)(2); therefore, the effective date of the disclaimers here is the date the accounts were created. By operation of section 801, for purposes of determining the disposition of the IRAs, we treat the named and contingent beneficiaries here as having predeceased the creation of the accounts. Accordingly, it is as if no beneficiary was designated on the accounts when they were opened.

 Wife argues the circuit court erred in treating the IRA proceeds as cash subject to distribution under Item IX because Item II acted as a testamentary designation of the beneficiary of a nontestamentary asset, or, alternatively, that Item II was a specific bequest to her of that asset. We agree with Wife that Item II acted as a designation of a nontestamentary asset.

 Generally, an IRA account does not become an asset of the depositor's estate on his or her death. 31 Am.Jur.2d *Executors and Administrators* § 502 (1989). Although the issue presented in this case is novel under South Carolina case law, we find guidance in the provisions of the probate code. By statute,

Any of the following provisions in an insurance policy, contract of employment, bond, mortgage, or other security interest, promissory note, deposit agreement, pension plan, trust agreement, conveyance, or any other written instrument otherwise effective as a contract, gift, conveyance, or trust is deemed to be nontestamentary, and this Code does not invalidate the instrument or any provision:

(1) that money or other benefits theretofore due to, controlled, or owned by a decedent shall be paid after his death

to a person designated by the decedent in either the instrument or a separate writing, including a will, executed at the same time as the instrument or subsequently....

S.C.Code Ann. § 62–6–201 (1987). We note that it is not completely clear based on the quoted language whether the provision in the instrument is nontestamentary or the asset is nontestamentary. If a statute is ambiguous, the court must construe its terms in accordance with the rules of statutory construction. *Lester v. S.C. Workers' Comp. Comm'n*, 334 S.C. 557, 561, 514 S.E.2d 751, 753 (1999). The title of article six of the probate code is "Nonprobate Transfers." Although the title and headings of a statute may not be construed to limit the plain language of a statute, they may be used to shed light on an ambiguous word or phrase. *Garner v. Houck*, 312 S.C. 481, 486, 435 S.E.2d 847, 849 (1993). Therefore, the placement of section 201 in this chapter suggests that these accounts should be treated as nontestamentary. Moreover, our section 201 was taken from the Uniform Probate Code. *See* Unif. Probate Code § 6–101 (amended 1998), 8 U.L.A. 430–31 (Supp.2000). The reporter's comments to the uniform provision read in part as follows, "The sole purpose of this section is to prevent the transfers authorized here from being treated as testamentary." *Id.* Based on the above, we find section 201 reflects a legislative intent that such accounts be nontestamentary, even if the beneficiary designation is made by will.[3]

This interpretation is consistent with the law relating to payable on death (POD) accounts. These accounts are nontestamentary as described in S.C.Code Ann. section 62–6–106 (1987). IRAs and POD accounts are similar in nature and operation. *See* S.C.Code Ann. § 62–6–101(10) (1987) (defining POD account as "an account payable on request to one person during his lifetime and on his death to one or more payees").

---

3. We disagree with respondent's contention that the bequest of the IRA account to Wife under Item II of the will was adeemed because we find Item II acted as a designation rather than a specific bequest. Ademption "ineffectuates a specific legacy or devise because the testator has parted with the subject and occurs when 'the thing bequeathed is, in the lifetime of the testator, lost, disposed of, or, so substantially changed or altered as not to exist in specie when the will takes effect.'" *Taylor v. Goddard*, 265 S.C. 327, 331, 218 S.E.2d 246, 248 (1975). Because we find no bequest, there can be no ademption.

Although IRAs are regulated by the federal tax code, they basically function as a POD account. Therefore, it is logical to analogize IRAs to POD accounts for purposes of this analysis.

Because we find that the IRAs were nontestamentary transfers, we must reverse the circuit court's calculation of cash in the estate and his denial of Wife's claim. Using the circuit court's calculations, it appears Husband's estate included $45,044.18 in cash.[4] We find that Wife is entitled to thirty percent of that amount ($13,513.25) under Item IX of Husband's will.

**REVERSED.**

CURETON and HOWARD, JJ., concur.

---

4. We reach this number by subtracting the amount in the IRAs from the circuit court's cash total.