No. 42,508

State of Kansas, ex rel. William M. Ferguson, Attorney General, and Keith Sanborn, County Attorney of Sedgwick County, Kansas, *Appellant*, v. The City of Wichita, a Municipal Corporation, and Its Governing Body, To-wit: Levi B. Rymph, Commissioner and Mayor, and Justus H. Fugate, Herbert P. Lindsley, John Madden and John Stevens, Commissioners of said City, *Appellees.*

(360 P. 2d 186)

2

Opinion filed March 9, 1961.

*A. K. Stavely*, assistant attorney general, argued the cause, and *William M. Ferguson*, attorney general, *Robert E. Hoffman*, assistant attorney general, and *Keith Sanborn*, county attorney, were with him on the briefs for the appellant.

*Robert B. Morton*, of Wichita, argued the cause, and *Fred W. Aley* and *Paul M. Buchanan*, both of Wichita, were with him on the briefs for the appellees.

The opinion of the court was delivered by

PARKER, C. J.: This is an action in quo warranto brought by the State of Kansas on relation of the attorney general and county attorney of Sedgwick county, Kansas, against the city of Wichita and the members of the board of commissioners of such city who constitute its governing body.

The subject of the action is a contract which provides that the defendant city shall be furnished a municipal water supply for a reservoir to be constructed by the United States on the north fork of the Ninnescah River at a location approximately twenty miles west of Wichita. The state seeks to elicit a showing of the right by which the defendant city entered into the contract and to thereby test its legality and validity.

The court below sustained the contract and entered judgment for the defendants in accordance with a memorandum opinion which thoroughly examined all points of challenge and determined the contract and the proceedings and acts of the defendant city commissioners whereby the contract was approved and its execution authorized to be fully valid, lawful and binding. The case is here upon an appeal duly taken by the state.

All material facts are disclosed by the pleadings and admitted by the parties, including the contract itself which is set out at length as an exhibit to appellant's petition.

It may be noted at the outset that the contract is pursuant to the federal reclamation laws and accordingly is subject to the provisions of 70 Stat. 524, 43 U. S. C. § 423e, (43 U. S. C. A. § 423e), which require that its execution be confirmed by a court of competent jurisdiction before any water is furnished from the reservoir. Also, the contract itself contains, at numerical paragraph 24, a provision that it shall not become operative until such judicial confirmation has first been obtained. Aside from those requirements, this court

recognizes that the contract looks toward the development of a new and additional source of water supply to serve the largest population concentration in the state of Kansas and also the creation of flood control, fish, wild life and recreational facilities which would be of great benefit to the state at large. The public interest, therefore, is served by a judicial test of the legality and validity of the contract and the remedy of quo warranto has properly been invoked for that purpose.

The facts and history of events which form the background of the contract are rather extensive but may be summarized for the purposes of this opinion as follows:

At an election duly called and held on the 6th day of November, 1956, the electorate of the city of Wichita voted favorably on a proposition for the issuance of revenue bonds in a principal amount not exceeding $32,500,000 to pay the cost of acquiring the water-works distribution system of The Wichita Water Company, a private corporation, the then holder of water franchise rights in the city of Wichita. The bonds so authorized were duly issued and sold under ordinance No. 22-957 of the city of Wichita, which was adopted on July 30, 1957. That ordinance had and has the effect of a contract between the city of Wichita and the purchasers of the bonds sold thereunder.

The proceeds of the bond sale were used to purchase the distribution facilities of The Wichita Water Company with the result that from and after October 30, 1957, the city of Wichita has operated and maintained a fully integrated waterworks system embracing all functions of water service, from initial supply to customer delivery.

On the occasion of the aforesaid election of November 6, 1956, the electorate of the city of Wichita voted favorably upon another proposition. The essential features of that separate proposition authorized the issuance of water revenue bonds in a principal amount not to exceed $7,650,000 to defray the cost of a pipeline to a new source of water supply of the kind contemplated by the contract in question. The proposition contained the express proviso that the bonds should be issued only in the event a contract should first be entered into pursuant to federal reclamation laws:

". . . whereby the City would be furnished a municipal water supply from a dam and reservoir to be constructed and owned by the United States of America on the north fork of the Ninnescah River near Cheney, Kansas, at an estimated total cost to the United States of America of $15,392,000, and

whereby, further, the city would be obligated to reimburse the United States of America, over a term of years, the portion of the project cost allocated for reimbursement which reimbursable portion is currently estimated at not to exceed $9,377,000 of the total cost of said dam and reservoir, together with interest thereon not to exceed the rate of Three and one-half percent (3½%) per annum."

The revenue bonds for the pipeline have not been issued and the contract here under examination is designed to meet the condition precedent set out in the above ballot proposition.

Ordinance No. 22-957 contains provisions which authorize and permit the city of Wichita (a) to incur a contractual obligation to the United States of America in connection with the securing of an additional water supply for the city in the manner contemplated by the foregoing ballot proposition; and (b) to pay such contractual obligation from the city's water revenues as an expense of operation with priority over the bond debt service requirements. As heretofore observed, the revenue bond ordinance No. 22-957 constitutes a contract between the city and the bondholders, and the latter purchased the bonds subject to the foregoing conditions.

As directed by the 1956 ballot proposition, the governing body of the city of Wichita undertook to bring about a contract with the United States through the bureau of reclamation of the department of interior. These efforts involved extended negotiations with bureau of reclamation officials, accompanied by numerous feasibility, engineering and other studies. The result was the approval by the bureau of reclamation of the project, which has been federally designated as:

"Cheney Division, Wichita Federal Reclamation Project, consisting of a dam, reservoir, and related facilities, near Cheney, Kansas, on the North Fork of the Ninnescah River, Kansas, for the purposes of furnishing water for municipal uses, controlling floods, facilitating irrigation, enhancing recreational opportunities, preserving and propagating fish and wildlife, and for related purposes."

Thereafter, the city's governing body caused legislation to be introduced in the Congress of the United States authorizing the Cheney dam and reservoir as a federal reclamation project. That legislation was enacted in the closing days of the eighty-sixth session of the Congress and became effective when approved by the President of the United States on September 14, 1960. It is entitled:

"An Act to provide for the construction of the Cheney division, Wichita Federal reclamation project, Kansas, and for other purposes."

and is found at Public Law 86-787, 74 Stat. 1026.

The congressional enactment expressly states that the project shall not be commenced until a contract shall have been entered into with the city of Wichita:

". . . under which it shall have obligated itself to repay to the United States, within a period of not more than forty years from the time water is first made available from said works, those portions of the Federal costs of constructing, operating, and maintaining the works herein authorized which are allocated to municipal water supply, and interest on the unamortized balance of the amount of construction costs so allocated including interest during construction." (74 Stat. 1026.)

The contract in question was approved by the governing body of the city of Wichita at a regular meeting held January 17, 1961. The approval was in the form of a resolution which was adopted by the unanimous vote of the board of commissioners after the contract had been read in full and discussed in detail. Pursuant to such approval and the authorization and direction contained in the resolution, the mayor and city clerk executed the contract on behalf of the city of Wichita on January 18, 1961. On that same day the document was signed by a duly authorized official of the bureau of reclamation for and on behalf of the United States of America.

We now turn to a general description of the contract and an examination of its principal features. The facilities to be constructed by the United States include a rolled earth dam on the north fork of the Ninnescah River at a point approximately twenty miles west of the city of Wichita which will create a reservoir approximately ten miles in length and four miles in width at the damsite and in addition basic recreational facilities consisting of roads, picnic areas, water hydrants, sewage disposal systems, boat and beach developments and related works and appurtenances necessary for the operation of the project. The design of the reservoir will include an initial storage capacity of approximately 149,500 acre feet of water for Wichita's municipal uses; 80,400 acre feet for flood control; and 12,900 acre feet for fish and wildlife. Total construction costs are estimated at $18,274,000, all of which will be advanced by the United States. That portion of the total cost allocated for Wichita's municipal water supply is estimated at $7,223,000, which is to be repaid by the city to the United States

of America, together with interest at the rate of 2⅝ percent per annum on the unamortized balance over a period of forty years, commencing with a first annual installment which shall become due following the completion of the project works. So long as the city makes timely payment of those installments, it shall have the exclusive right to take all of the water from the reservoir that is allocated for a municipal water supply. Upon final satisfaction of the repayment obligation in full, the city shall have the permanent right to such use of water from the reservoir. (It should be noted here that the city is not acquiring any ownership in the physical facilities of the dam and reservoir, but rather is simply contracting with the United States as the owner of the reservoir for the furnishing of a municipal water supply. The distinction is important, as will presently appear.) The contract makes it unmistakably clear that the payments by the city shall be solely from revenues derived by the city from the sale of water and not from an ad valorem tax or any other source. The provisions of paragraph 10b. of the contract read:

"The United States shall never have the right to demand payment by the city of any obligation assumed or imposed on it under and by virtue of this contract from funds raised or to be raised by taxation. The City's obligations under this contract shall never be construed to be a debt of the City of such kind as to require it under the constitution and laws of the State of Kansas to levy and collect a tax to discharge such obligation, it being expressly understood by the parties hereto that all payments due by the City hereunder are to be made from water revenues received by the City."

Appellant has asserted several points of challenge to the contract which will be treated in the order and according to the groupings below appearing.

The first question posed is whether the contract is authorized by the statutes of the State of Kansas. In response, the appellees cite Chapter 239 of the Laws of Kansas of 1957 (now G. S. 1959 Supp., 12-2716 and 12-2717) which read in part as follows:

"SECTION 1. All cities of the state owning their own waterworks are hereby authorized and empowered to contract with the United States of America (or any agency or instrumentality thereof) *for the furnishing to such contracting city a municipal water supply from storage and distribution facilities constructed and owned by the United States of America* pursuant to the acts of congress relating to the reclamation and irrigation of lands and related subjects.

"SECTION 2. Such contracting city may thereby obligate itself to reimburse the United States of America such portion of the cost of such storage and

distribution facilities including interest thereon as may be determined by such city and the United States of America to be allocable to the municipal water supply furnished. Such contract for reimbursement may extend over such period of years as is permissible under applicable federal laws and regulations and as shall be agreed to by the governing body of such city." (Emphasis supplied.)

It appears that the foregoing statute expressly authorizes that which has been done in this instance, namely, the contracting by the city of Wichita (which owns its own waterworks) with the United States of America *for the furnishing of a municipal water supply* from storage facilities to be *constructed and owned* by the United States pursuant to federal reclamation laws. Moreover, the contract in question, again following the precise terms of the statute, obligates the city of Wichita to reimburse the United States for such portion of the cost of the reservoir, including interest thereon, as has been determined by the city and the United States *to be allocable to the municipal water supply furnished.* The forty year repayment period is clearly reasonable under the circumstances and conforms to the terms of the federal legislation above referred to, by which the project has been authorized. There is no limit set by the constitution of the State of Kansas as to the number of years for which a city may obligate itself by contract and sufficient authorization for the forty year term provided by the contract in question exists by virtue of the statute above quoted. The statute itself is fully constitutional and valid in all respects. There are no infirmities in its title (Article 2, Section 16, of our state constitution) and it has general application and is not subject to attack as special legislation (Article 2, Section 17, of our state constitution). See *Water District No. 1 v. Robb*, 182 Kan. 2, 318 P. 2d 387; *State, ex rel., v. Hodgson*, 183 Kan. 272, 326 P. 2d 752.

Secondly, appellant contends that the contract calls upon the city of Wichita to act beyond its powers with respect to land acquisition; that it contemplates that Wichita shall condemn the necessary land for the United States. The underlying historical rule is that eminent domain is one of the attributes of sovereignty and that such power must and may be exercised only by the sovereign for its sole benefit (18 Am. Jur., § 24, p. 649). And, under the constitution and laws of the State of Kansas as they now exist, the city of Wichita does not have the power to acquire land by eminent domain in the name of and for the benefit of the United States. However, an examination of numerical paragraph 12 of

the contract discloses that there is no mandatory requirement that the city acquire land in the manner challenged. The language of the contract very carefully qualifies the obligation of the city in such respect by stating that the city shall be required to undertake such land acquisition only "to the extent authorized by state law." Therefore, inasmuch as the city is not presently authorized by state law to so act, those provisions of the agreement are merely inoperative and the land acquisition will of necessity have to be accomplished by the United States of America in its own name until and unless future enactments of the legislature shall sufficiently authorize the city to so act. Thus, the present inability of the city to carry out the conditional obligation of the contract in respect of land acquisition does not in any manner vitiate the contract. This disposition of the second point raised by appellant makes unnecessary any comment or ruling on the contention that such land acquisition by the city under the contract would be in violation of the cash basis law.

As a third point of challenge, appellant questions the provisions of the contract which state that the payments of the city thereunder shall be classified as an expense of operation and hence paramount to revenue bond debt service requirements. As has been shown above, such treatment of the city's repayment obligation is in exact conformity to the terms of Wichita's ordinance No. 22-957 under which the waterworks revenue bonds were issued and sold and according to which the water revenues received by the city are to be disbursed. It is abundantly clear that the payments by the city under the contract are for the *"furnishing of a municipal water supply"* and thus properly classifiable as an operating expense. Indeed, it would seem that the cost of a raw product which is purchased for later sale to consumers should, from an accounting standpoint, ordinarily be treated as an expense of operation. In all events, the classification of the repayment obligation of the city of Wichita under the contract as an operational expense is not proscribed by any provision of the laws or constitution of the State of Kansas, but is on the contrary reasonable, proper and within the authorized powers of the city of Wichita.

A fourth question raised by appellant is that whereas the contract contemplates that the city shall install its intake works at a point on the downstream face of the dam, it is a fair assumption that those intake works which are to be at the cost of the city, will be

located on federal property. The contract, however, read in full context, makes it clear that the city shall have a "right" to enter on to the federally owned land to the extent necessary to connect the city's pipeline and intake works to the outlet to be provided in the dam. It is unnecessary to attempt to classify that "right" as being an easement, right-of-way, profit or license and this court declines to make any such classification. It suffices to say that the contract is interpreted and construed as entitling the city of Wichita to retain separate title and ownership of its pipeline and intake facilities, even though they be located on United States property and that by virtue of such express agreement, the pipeline and intake works will not become affixed to and a part of the federally owned realty upon which they are located.

For a fifth and final point, appellant suggests that the approval of the contract and the authorization for its execution by the city's governing body on January 17, 1961, should have been by ordinance rather than by resolution. The contract is fully within the terms and scope of the November 6, 1956, ballot proposition voted by the electorate of Wichita. The repayment obligation of the city is substantially less than the ceiling provided by the proposition, i. e., $7,223,000 as compared with the authorized $9,377,000. Also, the 2⅝ percent rate of interest specified in the contract is well below the 3½ percent maximum prescribed by the ballot proposition. Thus, the city, through its governing body, has acted within and according to the mandate of the ballot proposition voted by the electorate. Moreover, the proceedings by which the contract in question was finally approved and its execution authorized were in all respects due and regular. In point with respect to the question of whether the final action should have been by ordinance rather than by resolution is the case of State, ex rel., v. City of Coffeyville, 138 Kan. 909, 912, 28 P. 2d 1032. There the governing body of a city of the first class by resolution rather than ordinance, entered into a contract to purchase gas to meet the city's requirements at a stipulated price and for a fixed term of years, and with the privilege granted to the gas company to lay pipes in the city streets and alleys. The court held that such action of the governing body was purely administrative in character and that hence the authorization of the contract by resolution was fully sufficient.

Also, as has been heretofore pointed out, the city by *ordinance* No. 22-957 (adopted *after* Chapter 239, Laws of 1957) authorized a

contract such as the one under examination and directed that the payments for the water supply so obtained should be on a parity with other expenses of operation. The ordinance provisions in that regard read:

". . . the City may incur any such contractual obligations [to the United States for the furnishing of a municipal water supply] and may pay and discharge the same as an expense of operating its waterworks utility . . ."

10 McQuillan, Municipal Corporations, [3rd Ed.], § 29.19, p. 234 points out that absent a requirement in the authorizing legislation that the contract be approved by ordinance, a resolution is fully adequate:

"And where the state legislature has authorized a municipality to make a contract but does not require it to be done by ordinance, the legislative body of the municipality may contract by vote upon motion, or by the passage of a resolution."

It will be remembered that Chapter 239 of the Laws of 1957 authorizes the contract in question but does not require that it be approved by ordinance.

Under all of the facts and circumstances here existing, the authorization for the execution of the contract by resolution of the governing body of the city of Wichita on January 17, 1961, was fully sufficient and the binding effect of the contract is not in any way affected or impaired thereby.

Finally, in addition to the conclusions heretofore announced, it should be noted we agree with the trial court's general finding that the proceedings and acts of the governing body of appellee city whereby the contract was approved and its execution authorized were proper and valid and that the contract itself is legal and binding upon the parties according to its terms and provisions.

The judgment is affirmed.