642 S.E.2d 751

**CATAWBA INDIAN TRIBE OF SOUTH CAROLINA, Respondent,**

v.

**The STATE of South Carolina and Henry D. McMaster, in his official capacity as Attorney General of the State of South Carolina, Appellants.**

No. 26291.

Supreme Court of South Carolina.

Heard Jan. 17, 2007.

Decided March 19, 2007.

Rehearing Denied April 18, 2007.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Robert D. Cook, and Senior Assistant Attorney General C. Havird Jones, Jr., all of Columbia, for Appellants.

Dwight F. Drake and B. Rush Smith, III, both of Nelson, Mullins, Riley & Scarborough, LLP, of Columbia; Jay Bender, of Baker, Ravenel & Bender, LLP, of Columbia; Robert M. Jones, of Rock Hill; and Jim O. Stuckey, II, of Littler Mendelson, PC, of Columbia, for Respondent.

Justice BURNETT.

The State of South Carolina and Henry D. McMaster, in his official capacity as Attorney General of the State, (Appellants) appeal the circuit court's grant of summary judgment in favor of the Catawba Indian Tribe of South Carolina (Respondent). We certified the case for review from the Court of Appeals pursuant to Rule 204(b), SCACR, and we affirm in part and reverse in part.

### FACTUAL/PROCEDURAL BACKGROUND

In 1993, after many years of litigation and extensive negotiations, Respondent, the State, and the United States entered into a settlement that ended a dispute over the right to possession of 144,000 acres of land located in York, Lancaster, and Chester counties.[1] This settlement was memorialized in an Agreement in Principle ("Settlement Agreement"). Federal legislation[2] ("Federal Act") and state legislation[3] ("State

---

1. *See generally South Carolina v. Catawba Indian Tribe, Inc.*, 476 U.S. 498, 106 S.Ct. 2039, 90 L.Ed.2d 490 (1986) (describing the historical background of this land dispute); 25 U.S.C.A. § 941(a)(4) (2001) (describing the historical background which led to the Settlement Agreement); S.C.Code Ann. § 27-16-20 (2007) (same).

2. 25 U.S.C.A. §§ 941-941n (2001 & Supp.2006).

Act") implemented the Settlement Agreement. The Federal Act requires the Settlement Agreement and the State Act to be complied with as if they had been implemented by federal law. 25 U.S.C.A. § 941b(a)(2) (2001).

As part of the settlement, Respondent waived its right to be governed by the Indian Gaming Regulatory Act.[4] 25 U.S.C.A. § 941*l* (a); Settlement Agreement § 16.1. Respondent instead agreed to be governed by the terms of the Settlement Agreement and the State Act with regards to games of chance. 25 U.S.C.A. § 941*l* (b); S.C.Code Ann. § 27–16–110(A) (2007); Settlement Agreement § 16.2. The Settlement Agreement and the State Act give Respondent specific rights related to bingo and video poker or similar electronic play devices. S.C.Code Ann. § 27–16–110(B)–(H); Settlement Agreement § 16.3–.9.

Respondent brought this declaratory judgment action against Appellants seeking, *inter alia,* a declaration that pursuant to the terms of the Settlement Agreement and the State Act, Respondent has a present and continuing right to operate video poker or similar electronic play devices on its Reservation and a declaration that Respondent is not required to charge or pay an entrance fee imposed by S.C.Code Ann. § 12–21–4030(B)(1) (2000) against its bingo operation. On cross-motions for summary judgment, the circuit court ruled in favor of Respondent.

### *ISSUES*

I. Did the circuit court err in granting summary judgment to Respondent on the ground Respondent has the present and continuing right to operate video poker or similar electronic play devices on its Reservation?

II. Did the circuit court err in granting summary judgment to Respondent on the ground the entrance fee imposed by S.C.Code Ann. § 12–21–4030(B)(1) (2000) was not applicable to Respondent's bingo operation?

---

**3.** S.C.Code Ann. §§ 27–16–10 through –140 (2007).

**4.** 25 U.S.C.A. §§ 2701–2721 (2001 & Supp.2006).

## *STANDARD OF REVIEW*

A circuit court may properly grant a motion for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), SCRCP; *Tupper v. Dorchester County,* 326 S.C. 318, 325, 487 S.E.2d 187, 191 (1997). In determining whether any triable issues of fact exist, the circuit court must view the evidence and all reasonable inferences that may be drawn from the evidence in the light most favorable to the non-moving party. *Manning v. Quinn,* 294 S.C. 383, 385, 365 S.E.2d 24, 25 (1988). On appeal from an order granting summary judgment, the appellate court will review all ambiguities, conclusions, and inferences arising in and from the evidence in a light most favorable to the non-moving party below. *Osborne v. Adams,* 346 S.C. 4, 7, 550 S.E.2d 319, 321 (2001).

The issue of interpretation of a statute is a question of law for the court. *Charleston County Parks & Recreation Comm'n v. Somers,* 319 S.C. 65, 67, 459 S.E.2d 841, 843 (1995) ("The determination of legislative intent is a matter of law."). We are free to decide a question of law with no particular deference to the circuit court. *Moriarty v. Garden Sanctuary Church of God,* 341 S.C. 320, 327, 534 S.E.2d 672, 675 (2000).

## *LAW/ANALYSIS*

### I. Video Poker

Appellants argue the circuit court erred in granting summary judgment to Respondent on the ground the Settlement Agreement and the State Act give Respondent a present and continuing right to operate video poker or other similar electronic play devices on its Reservation. We agree.

The State Act provides:

[Respondent] may permit on its Reservation video poker or similar electronic play devices to the same extent that the devices are authorized by state law. [Respondent] is subject to all taxes, license requirements, regulations, and fees governing electronic play devices provided by state law,

except if the Reservation is located in a county or counties which prohibit the devices pursuant to state law, [Respondent] nonetheless must be permitted to operate the devices on the Reservation if the governing body of [Respondent] so authorizes, subject to all taxes, license requirements, regulations, and fees governing electronic play devices provided by state law.

S.C.Code Ann. 27–16–110(G); *see also* Settlement Agreement § 16.8 (same).

Appellants contend § 27–16–110(G) does not enable Respondent to operate video poker devices on its Reservation regardless of a statewide ban on the devices. Appellants argue the Settlement Agreement and the State Act provide Respondent with the right to permit or operate video poker devices on its Reservation only "to the same extent that the devices are authorized by state law." S.C.Code Ann. § 27–16–110(G).

Respondent argues the Settlement Agreement and the State Act differentiate between the terms "permit" and "operate," such that Respondent may *"permit"* video poker devices on its Reservation "to the same extent that the devices are authorized by state law." *Id.* (emphasis added). Respondent further argues it "nonetheless must be permitted to *operate* the devices on the Reservation if the governing body of [Respondent] so authorizes" and if the counties where the Reservation is located prohibit the video poker devices. *Id.* (emphasis added). Respondent contends because state law now prohibits video poker devices, Respondent may not give permission to third parties to place and maintain video poker machines on its Reservation. Respondent further contends, as a sovereign, it may now operate the devices on its Reservation if its governing body authorizes the operation because the counties where the Reservation is located prohibit them.

The cardinal rule of statutory construction is to ascertain and effectuate the intent of the legislature. *Burns v. State Farm Mut. Auto. Ins. Co.,* 297 S.C. 520, 522, 377 S.E.2d 569, 570 (1989). If a statute's language is plain, unambiguous, and conveys a clear meaning, then "the rules of statutory interpretation are not needed and the court has no right to impose another meaning." *Hodges v. Rainey,* 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000). The words of the

statute must be given their plain and ordinary meaning without resorting to subtle or forced construction to limit or expand the statute's operation. *Hitachi Data Sys. Corp. v. Leatherman*, 309 S.C. 174, 178, 420 S.E.2d 843, 846 (1992).

The language of § 27–16–110(G) is unambiguous.[5] The first sentence of § 27–16–110(G) provides that Respondent may permit video poker or similar electronic play devices on its Reservation "to the same extent that the devices are authorized by state law." "[P]ermit" as used in the first sentence means "[t]o allow." *Black's Law Dictionary* 1160 (7th ed.1999). Under the plain language of § 27–16–110(G), Respondent may allow video poker devices on its Reservation, either by its own operation or a third-party's operation, to the same extent state law authorizes the devices. The terms permit and operate must be interpreted as such to effectuate the intent of the legislature.[6] Furthermore, we reject Respon-

---

5. The circuit court was persuaded by the affidavit of Crawford Clarkson, the State's lead negotiator of the Settlement Agreement, in making its ruling. The circuit court erroneously relied on Clarkson's affidavit and erroneously considered the affidavits submitted by Appellants in conjunction with their motions for summary judgment and for reconsideration because the statute is not ambiguous. *See Tilley v. Pacesetter Corp.*, 355 S.C. 361, 373, 585 S.E.2d 292, 298 (2003) (finding there is no need to employ the rules of statutory construction when the language of a statute is plain and unambiguous). Moreover, even if the statute was ambiguous, affidavits of drafters of the statute and legislators are not admissible as evidence of legislative intent. *Kennedy v. S.C. Ret. Sys.*, 345 S.C. 339, 353–54, 549 S.E.2d 243, 250 (2001).

6. In the same year it enacted the State Act, the legislature also enacted a local option law permitting counties to hold an individual referendum to determine whether cash payouts for video gaming should remain legal. Act No. 164, Part II, § 19G, 1993 S.C. Acts 1138–1139, formerly codified at S.C.Code Ann. §§ 12–21–2806 and –2808 (repealed effective July 1, 2000). In light of this historical fact, the phrase in the second sentence of the State Act that refers to Respondent's right to operate video poker devices if "the Reservation is located in a county or counties which prohibit the devices" does not refer to a statewide ban on video poker devices; rather, it refers to a county's ban on the devices. S.C.Code Ann. § 27–16–110(G). This history further demonstrates the legislature's clear intention to limit Respondent's right to operate video poker devices on its Reservation to the same extent state law authorizes such devices. *See Greenville Baseball v. Bearden*, 200 S.C. 363, 368, 20 S.E.2d 813, 815–16 (1942) ("A statute as a whole must receive a practical, reasonable and fair interpretation consonant

dent's proposed construction of § 27–16–110(G) because such construction would create an absurd result, which the legislature clearly did not intend. *See Kiriakides v. United Artists Communications, Inc.*, 312 S.C. 271, 275, 440 S.E.2d 364, 366 (1994) ("However plain the ordinary meaning of the words used in a statute may be, the courts will reject that meaning when to accept it would lead to a result so plainly absurd that it could not possibly have been intended by the Legislature or would defeat the plain legislative intention. . . . If possible, the court will construe the statute so as to escape the absurdity and carry the intention into effect.") (citing *Stackhouse v. Rowland*, 86 S.C. 419, 422, 68 S.E. 561, 562 (1910)). The legislative intent was to circumscribe Respondent's right to allow video poker devices on its Reservation, either by its own operation or a third-party's operation, to the extent state law allowed the devices.[7]

Respondent contends unlike § 27–16–110(F), which requires its bingo license to be "revoked if the game of bingo is no longer licensed by the State," § 27–16–110(G) does not include language requiring the termination of Respondent's possession or operation of video poker devices if state law bans the devices. Respondent argues if its right to operate video poker devices was contingent upon state law allowing the devices, then language similar to that used in § 27–16–110(F) would have been included in § 27–16–110(G). Respondent's argument is without merit because the rules of statutory construction are not applicable. *See Lester v. S.C. Workers' Comp. Comm'n*, 334 S.C. 557, 561, 514 S.E.2d 751, 752 (1999) (finding a court employs the rules of statutory construction only when a statute is ambiguous).

Respondent also contends it may operate video poker devices on its Reservation as a sovereign regardless of a statewide ban on the devices. "The [United States Supreme] Court has consistently recognized that Indian tribes retain

with the purpose, design and policy of the lawmakers. And the history of the period in which the [statute] was passed may be considered.").

7. We note state law presently bans the possession and operation of video poker devices. *See* S.C.Code Ann. § 12–21–2710 (2000). Therefore, under the plain language of § 27–16–110(G), Respondent may not currently allow the devices on its Reservation.

'attributes of sovereignty over both their members and their territory,'..., and that 'tribal sovereignty is dependent on, and subordinate to, only the Federal Government, not the States....' It is clear, however, that state laws may be applied to tribal Indians on their reservations if Congress has expressly so provided." *California v. Cabazon Band of Mission Indians,* 480 U.S. 202, 207, 107 S.Ct. 1083, 1087, 94 L.Ed.2d 244, 253 (1987) (citing *United States v. Mazurie,* 419 U.S. 544, 557, 95 S.Ct. 710, 717, 42 L.Ed.2d 706, 716 (1975) and *Washington v. Confederated Tribes of the Colville Indian Reservation,* 447 U.S. 134, 154, 100 S.Ct. 2069, 2081, 65 L.Ed.2d 10, 29 (1980)). In this case, Congress expressly provided that "all laws, ordinances, and regulations of the State, and its political subdivisions, govern the regulation of gambling devices and the conduct of gambling or wagering by [Respondent] on and off the Reservation," unless the Settlement Agreement and the State Act specifically provide otherwise. 25 U.S.C.A. § 941*l* (b). Generally, Respondent agreed to be "subject to the civil, criminal, and regulatory jurisdiction of the State ... and [to] the civil and criminal jurisdiction of the courts of the State to the same extent as any other person, citizen, or land in the State...." S.C.Code Ann. § 27–16–40; *see also* Settlement Agreement § 4.3. Specifically, the Settlement Agreement and the State Act require state law to govern the conduct of gambling by Respondent, and the Federal Act requires the State Act to be complied with as if implemented by federal law. S.C.Code Ann. § 27–16–110(A); *see also* Settlement Agreement § 16.1; 25 U.S.C.A. § 941b(a)(2). By Congress's express approval of the State Act and by the terms of the Settlement Agreement and the State Act, Respondent relinquished any attributes of sovereignty relating to games of chance in this state.

 Respondent also argues because the Federal Act requires the consent of both Respondent and the State to amend the terms of the Settlement Agreement and State Act, any subsequent state legislative enactments are not applicable to Respondent unless Respondent consents to the enactments. *See* 25 U.S.C.A. § 941m(f). The State Act is a contract between Respondent and the State, and "[i]t is a fundamental rule of contract construction that the law existing at the time and place of the making of a contract is a part of the contract."

*City of North Charleston v. North Charleston Dist.*, 289 S.C. 438, 442, 346 S.E.2d 712, 715 (1986). "However, statutes and ordinances enacted subsequent to the execution of a contract, which add burdens or impair the obligations of the contract, may not be deemed to be a part of the agreement unless the language of the agreement clearly indicates this to have been the intention of the parties." 17A Am.Jur.2d *Contracts* § 372 (2004). The first sentence of § 27–16–110(G) clearly binds Respondent to any subsequent state legislative enactments affecting video poker devices. The inclusion of the phrase "to the same extent that the devices are authorized by state law" is indicative of the parties' intent for Respondent to be subject to any future changes in state law regarding video poker devices.[8] *See, e.g., Lewis v. Quality Coal Corp.*, 270 F.2d 140, 142 (7th Cir.1959) (finding the phrase "to the extent and in the manner permitted by law" required "conformity to existing or future law"); *State ex rel. Ferguson v. City of Wichita*, 188 Kan. 1, 360 P.2d 186, 191–92 (1961) (finding contractual phrase "to the extent authorized by state law" included future legislation).

## II. Entrance Fee

■ Appellants argue the circuit court erred in concluding the general entrance fee imposed by S.C.Code Ann. § 12–21–4030(B)(1) is not applicable to Respondent's bingo operation. We disagree.

The State Act provides in relevant part:

[Respondent] shall pay, *in lieu of an admission, a head, a license, or any other bingo tax,* a special bingo tax equal to ten percent for each dollar of face value for each bingo card sold. No other federal, state, or local taxes apply to revenues generated by the bingo games operated by [Respondent].

---

8. Respondent also argues it is not bound by the current prohibition on video poker devices because the Settlement Agreement and the State Act were not "specifically modified or expressly repealed" as required by Act No. 125 of 1999, Pt. V, § 22(C). Act No. 125 of 1999 enacted the current legislation prohibiting the possession and operation of video poker devices. S.C.Code Ann. § 12–21–2710. Because the State Act requires future state law related to video poker devices to apply to Respondent, Respondent's argument is meritless.

S.C.Code Ann. § 27–16–110(C)(3) (emphasis added); *see also* Settlement Agreement § 16.4.3 (same). Section 12–21–4030(B)(1) requires certain bingo license holders, including Respondent, to impose "an entrance fee of eighteen dollars."

Section 27–16–110(C)(3) states Respondent must pay a special bingo tax instead of an admission or, in other words, an entrance fee. The imposition of § 12–21–4030(B)(1) against Respondent's bingo operation violates the plain language of § 27–16–110(C)(3). *Carolina Power & Light Co. v. City of Bennettsville*, 314 S.C. 137, 139, 442 S.E.2d 177, 179 (1994) ("When statutory terms are clear and unambiguous, there is no room for construction and courts are required to apply them according to their literal meaning."). In addition, the entrance fee cannot be imposed against Respondent because the Federal Act requires the consent of both the State and Respondent to amend the terms of the State Act, and Respondent did not consent to this amendment. 25 U.S.C.A. § 941m(f)(1) (requiring the consent of both Respondent and the State if the amendment relates to "the jurisdiction, enforcement, or application of civil, criminal, regulatory, or tax laws of [Respondent] and the State").

## CONCLUSION

We conclude pursuant to the terms of the Settlement Agreement and the State Act, Respondent has the right to allow video poker and similar electronic play devices on its Reservation, either by a third-party's operation or its own operation, to the same extent the devices are authorized by state law. We reverse the grant of summary judgment in favor of Respondent on this ground and remand to the circuit court for entry of judgment in favor of Appellants. We also affirm the grant of summary judgment in favor of Respondent on the issue related to the bingo entrance fee.

**AFFIRMED IN PART; REVERSED IN PART.**

MOORE, A.C.J., WALLER, PLEICONES, JJ., and Acting Justice DIANE S. GOODSTEIN, concur.