707 S.E.2d 402

**Ex parte The STATE of South Carolina ex rel. Alan WILSON, Attorney General, Appellant,**

**In re Christopher Ward Campbell, Gregory Scott Kinsey, Shemuel Ben Yisrael & Coastal Conservation League, Appellants,**

**v.**

**The Town of Yemassee, Binden Plantation, LLC, Castle Hill Farms, Inc. & Raymond B. Basso, Respondents.**

No. 26938.

Supreme Court of South Carolina.

Heard Sept. 22, 2010.

Decided March 7, 2011.

Rehearing Denied April 20, 2011.

**2.** That is, by consciously failing to exercise due care. *E.g., McGee v. Bruce Hosp. Sys.,* 321 S.C. 340, 468 S.E.2d 633 (1996).

Attorney General Alan Wilson, Assistant Deputy Attorney General Robert D. Cook and Assistant Deputy Attorney General J. Emory Smith, Jr., all of Columbia, for Appellant, State ex rel. Wilson.

G. Trenholm Walker, W. Andrew Gowder, Jr. and Daniel S. McQueeney, Jr., all of Pratt–Thomas & Walker, of Charleston, for Appellants Campbell, Kinsey, and Coastal Conservation League.

Shemuel Ben Yisrael, of Yemassee, pro se appellant.

Roberts Vaux and Deborah H. Boshaw, both of Vaux & Marscher, of Bluffton, for Respondent Town of Yemassee.

Frances I. Cantwell, of Regan & Cantwell, of Charleston, for Respondents Binden Plantation, LLC, Castle Hill Farms, Inc., and Raymond P. Basso.

Justice KITTREDGE.

These consolidated direct appeals concern annexation, specifically the "100% petition method" in South Carolina Code section 5–3–150(3). After the Town of Yemassee annexed property purportedly pursuant the 100% petition method, Appellants Campbell, Kinsey, Yisrael, and Coastal Conservation League filed an action challenging the annexation. We are asked to determine whether the circuit court erred in finding the individual Appellants and Coastal Conservation League did not have standing to challenge the annexation. In addition, we are asked whether the circuit court erred in denying the State's motions to intervene or be substituted as the real party in interest in the annexation challenge.

We hold the circuit court properly granted summary judgment to Respondents because the individual Appellants lacked standing. The State, on the other hand, had standing to challenge the annexation. In this regard, the circuit court erred in finding the State's signature was not required before the annexation could proceed under the 100% petition method. Nevertheless, because the section 5–3–270 statute of limitations had expired before the State sought to intervene, we hold the circuit court properly denied the State's motions. Thus, we affirm in result.

## I.

In April 2006, the Town of Yemassee ("the Town") adopted an ordinance annexing the following:

(1) Binden Plantation and the "upland, marsh and O.C.R.M. critical areas" therein, to include "the marshes of the Pocotaligo River and Stoney Creek," and "any roads, rights-of-way, easements, railroad tracks, utility lines, or critical areas within the boundaries of Binden Plantation;"

(2) a strip of land twenty feet in width on the property of Castle Hill Farms ("the Strip"), the Strip beginning at the intersection of U.S. Highways 17 and 21 and running along the rights-of-way to those highways and to U.S. Highway 17A, then along the right-of-way to Castle Hill Road until it reaches the Town boundary; and

(3) "[a]ll roads, easements, rights-of-way, railroad tracks, marshlands and critical areas that intervene between Binden Plantation" and the Strip; between any portions of the Strip; and between the Strip and the corporate limits of the Town.

Binden Plantation, Castle Hill Farms, and Raymond P. Basso were the only signatories to the annexation petition.[1] The State, which is the presumptive owner of the annexed marshlands, did not sign the petition. Notwithstanding the absence of the State's consent to the annexation, the annexation ordinance recites that the Town received a petition signed "by all persons owning real estate" in the annexed area.

The annexation petition was expressly contingent on the Town's approval of a development agreement. This agreement permitted the annexed property to be developed with single and multiple family homes, parks, equestrian facilities, golf courses, and commercial, office, and retail buildings.

Appellants Campbell, Kinsey, Yisrael, and Coastal Conservation League (hereinafter, the "Private Party Appellants") filed a complaint challenging the annexation. Appellants Campbell and Kinsey are the co-owners of approximately 1000 acres of land in Beaufort County abutting Binden Plantation. Their property shares a border with Binden for approximately

---

1. Binden Plantation consists of approximately 1300 acres of property located in Beaufort County, directly across the intersection of U.S. Highways 17 and 21 from Castle Hill Farms. Respondent Raymond P. Basso is the president of Castle Hill Farms.

one mile. Appellant Yisrael is a freeholder [2] and resident of the Town. Campbell, Kinsey, and Yisrael are also members of the Coastal Conservation League, a non-profit environmental organization.

Respondents moved for summary judgment, asserting the Private Party Appellants lacked standing. Before the circuit court ruled on the motion for summary judgment, the State—through the Attorney General—moved on July 16, 2007 to intervene. The State then filed an alternative motion on October 1, 2007 to be substituted as the real party in interest.

The circuit court granted Respondents' motion for summary judgment and declined to reach the merits of the annexation challenge. The court denied the State's motions.

## II.

■ The construction of a statute is a question of law, which this Court may resolve without deference to the circuit court. *Catawba Indian Tribe of S.C. v. State*, 372 S.C. 519, 524, 642 S.E.2d 751, 753 (2007) ("The issue of interpretation of a statute is a question of law for the court. We are free to decide a question of law with no particular deference to the circuit court." (internal citation omitted)).

South Carolina Code Title Five, Chapter Three, sets forth various methods that a municipality may use to extend its corporate limits. S.C.Code Ann. § 5-3-10 (2004). Two methods of annexation are at issue here. First, the "100% petition method" allows a municipality to annex property upon the signature of all persons who own real estate in the annexed area. The requirements of this method are set forth at South Carolina Code section 5-3-150(3) (2004):

Notwithstanding the provisions of subsections (1) and (2) of this section, any area or property which is contiguous to a municipality may be annexed to the municipality by filing with the municipal governing body a petition signed by all persons owning real estate in the area requesting annexation. Upon the agreement of the governing body to accept the petition and annex the area, and the enactment of an

---

2. "Freeholder" is a term of art defined by South Carolina Code section 5-3-240 (2004). This definition is set forth below in Section III.B.1.

ordinance declaring the area annexed to the municipality, the annexation is complete.... This method of annexation is in addition to any other methods authorized by law.

Second, the "75% petition method" permits a municipality to proceed with annexation with the consent of less than all of the property owners. The requirements of this method are set forth at South Carolina Code section 5–3–150(1):

Any area or property which is contiguous to a municipality may be annexed to the municipality by filing with the municipal governing body a petition signed by seventy-five percent or more of the freeholders, as defined in Section 5–3–240, owning at least seventy-five percent of the assessed valuation of the real property in the area requesting annexation. Upon the agreement of the governing body to accept the petition and annex the area, and the enactment of an ordinance declaring the area annexed to the municipality, the annexation is complete.... This method of annexation is in addition to any other methods authorized by law; however, this property may not be annexed unless the following has been complied with: ... (5) the municipality or any resident of it and any person residing in the area to be annexed or owning real property of it may institute and maintain a suit in the court of common pleas, and in that suit the person may challenge and have adjudicated any issue raised in connection with the proposed or completed annexation; (6) not less than thirty days before acting on an annexation petition, the annexing municipality must give notice of a public hearing by publication in a newspaper of general circulation in the community, by posting the notice of the public hearing on the municipal bulletin board, and by written notification to the taxpayer of record of all properties within the area proposed to be annexed, to the chief administrative officer of the county, to all public service or special purpose districts, and all fire departments, whether volunteer or full time. This public hearing must include a map of the proposed annexation area, a complete legal description of the proposed annexation area, a statement as to what public services are to be assumed or provided by the municipality, and the taxes and fees required for these services. The notice must include a projected timetable for the provision or assumption of these services.

■ The 75% petition method provides greater notice and opportunity to challenge than the 100% petition method. The 100% petition method provides neither an express notice provision nor an authorization for third parties to challenge the annexation. The absence of such provisions in the 100% petition method is readily understood in light of the requirement that **all** property owners in the annexed area consent by signing the annexation petition. Notably, residents of the annexing municipality are not permitted to challenge a 100% petition annexation. Rather, "[i]n order to challenge a 100% annexation, the challenger must assert an infringement of its own proprietary interests or statutory rights." *St. Andrews Public Service District v. City Council of Charleston*, 349 S.C. 602, 604, 564 S.E.2d 647, 648 (2002) (citing *State, by State Budget and Control Bd. v. City of Columbia*, 308 S.C. 487, 489, 419 S.E.2d 229, 230 (1992)). In sum, the 100% petition method is a "fast track" for annexation that may be used only when all of the property owners consent.

■ The State holds presumptive title to all land below the high water mark, including marshland, in trust for the benefit of the citizens of this State. *McQueen v. S.C. Coastal Council*, 354 S.C. 142, 149–50, 580 S.E.2d 116, 119–20 (2003); *see State v. Holston Land Co.*, 272 S.C. 65, 67–68, 248 S.E.2d 922, 923–24 (1978) (finding the term "marsh land" in a conveyance from the King sufficient to overcome the State's presumptive title to land below the high water mark). Thus, the State is the presumptive owner. of the marshlands that were annexed in this case.

### III. A. Private Party Appellants

■ The Private Party Appellants advanced several theories in support of their standing to challenge this annexation. We hold the circuit court properly rejected each theory. In doing so, we adhere to our existing precedent regarding standing to challenge 100% petition annexations. *See St. Andrews Public Service District*, 349 S.C. at 604, 564 S.E.2d at 648.

#### 1. Standing as a Resident of Yemassee

The annexation ordinance at issue recites that annexation was achieved pursuant to section 5–3–150(3), the 100% petition

method. The Private Party Appellants argue that, because the State is the presumptive owner of the annexed marshlands and the State did not sign the petition, the annexation was not proper under the 100% petition method. On this premise, Appellants contend the annexation was actually achieved by 75% petition. If the annexation was by 75% petition, Appellant Yisrael had standing to bring his challenge.[3] § 5–3–150(1)(5) ("[T]he municipality or any resident of it ... may institute and maintain a suit in the court of common pleas, and in that suit the person may challenge and have adjudicated any issue raised in connection with the proposed or completed annexation.").

The circuit court found the State's signature was not required for the 100% petition annexation, and therefore, Mr. Yisrael did not have standing under the 75% petition method. While we disagree with the circuit court's interpretation of the statute, we can only reach that question if presented by a party with standing. *See, e.g., ATC South, Inc. v. Charleston County,* 380 S.C. 191, 194–95, 669 S.E.2d 337, 339 (2008) ("We are obligated before reaching the merits of the rezoning question to determine whether ATC has standing to press its complaint."); *Joytime Distribs. and Amusement Co. v. State,* 338 S.C. 634, 639, 528 S.E.2d 647, 649 (1999) ("Standing to sue is a fundamental requirement in instituting an action."). We reject the suggestion that the perceived merits of the underlying claim may influence the standing determination. This basic principle defeats the Private Party Appellants' claim.

The ordinance recites that the annexation was achieved using the 100% petition method. If we went behind that assertion without a proper plaintiff, we would be inviting a sliding scale for standing: the more meritorious a claim appears, the more relaxed the standing requirement would be. We rejected such reasoning when we overruled *Quinn v. City of Columbia.*[4] *See St. Andrews Public Service District,* 349

---

3. The Private Party Appellants challenge the annexation on the grounds that (1) the Town failed to obtain the consent of the Department of Transportation prior to annexing the portion of U.S. Highway 17 that lies between Castle Hill Farms and Binden Plantation; and (2) the annexation is not contiguous. Because we find Appellants lack standing, we do not reach the merits of these challenges.

4. 303 S.C. 405, 401 S.E.2d 165 (1991).

S.C. at 605, 564 S.E.2d at 648 (overruling the *Quinn* rule that a stranger to an annexation may challenge the annexation if the ordinance is "absolutely void"). Adhering to our precedent, we must determine standing without regard to the merits of the underlying claim. Accordingly, we cannot use the alleged flaws in the 100% petition to find standing pursuant to the 75% petition method.

### 2. Public Trust Doctrine

The Private Party Appellants assert that, because the State holds title to the annexed marshlands in trust for the benefit of the residents and citizens of South Carolina, Appellants (as citizens) are equitable owners of these properties. Appellants argue this equitable ownership is a proprietary interest sufficient to create standing to challenge an annexation by 100% petition. We disagree.

Appellants' position in this regard is at odds with our holding in *St. Andrews Public Service District.* Under Appellants' position, every member of the public would have standing, even though our precedent states that standing to challenge annexations by 100% petition is limited. We adhere to our precedent and reject this argument.

### 3. Other Theories for Standing

The Private Party Appellants have advanced several additional theories in support of their standing. First, they argue Appellants Campbell and Kinsey have standing to challenge the annexation pursuant to a statute—South Carolina Code section 6–29–760(C) (2004)—that grants the owners of adjoining land standing to challenge zoning changes. This statute is inapplicable because this lawsuit challenges annexation, not zoning.

Second, the Private Party Appellants argue they will suffer an individualized injury sufficient to support standing because they personally enjoy "the nature views and wildlife" on the annexed property and their enjoyment would be harmed by the development of the property into commercial and residential units. This alleged harm is shared by all, and like Appellants' public trust claim, this argument, if accepted, would effectively overrule our decision in *St. Andrews Public Service District.*

Finally, the Private Party Appellants argue that if they do not have standing under section 5-3-150(3), this denial of standing violates their due process and equal protection rights under the South Carolina Constitution. We have carefully reviewed these claims and find them to be manifestly without merit. We affirm the circuit court's decision on these issues pursuant to Rule 220(b)(1), SCACR and the following authorities: *Lee v. S.C. Dep't of Natural Res.*, 339 S.C. 463, 467, 470 n. 4, 530 S.E.2d 112, 114-15 (2000) (setting forth the test for rational basis review of an equal protection claim and explaining that "[a] legislative enactment will be sustained against constitutional attack if there is 'any reasonable hypothesis' to support it," even if the hypothesis does not represent the "actual motivations of the enacting governmental body"); Rule 208(b)(1)(D), SCACR (requiring every issue raised in an appellant's brief to be "followed by discussion and citations of authority").

In sum, we hold the circuit court properly rejected each of the Private Party Appellants' arguments in support of standing. An annexation by 100% petition may be challenged only by a person who "assert[s] an infringement of [his or her] own proprietary interests or statutory rights." *St. Andrews Public Service District*, 349 S.C. at 604, 564 S.E.2d at 648.

## B. State's Motions to Intervene or be Substituted as the Real Party in Interest

Fifteen months after the annexation ordinance was adopted, and while Respondents' motion for summary judgment was pending, the State moved to intervene in the annexation challenge. The State then filed an alternative motion to be substituted as the real party in interest in the Private Party Appellants' case. The circuit court found both motions were untimely. While we disagree with the circuit court's reasoning as it pertains to the interpretation of section 5-3-150(3), we affirm the circuit court's determination that the State's effort to intervene was barred by the statute of limitations.

### 1. The State as an Owner of Real Estate within the Meaning of Section 5-3-150(3)

The circuit court found the phrase "persons owning real estate," as used in the 100% petition method, is synony-

mous with the word "freeholder" in the 75% petition method. "Freeholder" is defined as:

[A]ny person eighteen years of age, or older, and any firm or corporation, who or which owns legal title to a present possessory interest in real estate equal to a life estate or greater ... and who owns, at the date of the petition or of the referendum, at least an undivided one-tenth interest in a single tract and whose name appears on the county tax records as an owner of real estate.

§ 5–3–240. Because the State was not listed on the county tax rolls as an owner of the annexed property, the circuit court found the State was not a freeholder. Accordingly, the circuit court found the State's signature was not required for the 100% petition annexation. We reject this position.

■■■ Where the State holds title to real property in the area to be annexed, it is a "person[ ] owning real estate" within the meaning of section 5–3–150(3) and its signature is required to accomplish an annexation by 100% petition.

Section 5–3–150(3) provides in relevant part:

[A]ny area or property which is contiguous to a municipality may be annexed to the municipality by filing with the municipal governing body a *petition signed by all persons owning real estate in the area requesting annexation.*

(Emphasis added). By its plain language, section 5–3–150(3) requires the signatures of "all persons owning real estate in the area requesting annexation."

The term "freeholder" is not included in subsection (3), and we decline Respondents' invitation to read it in. The phrase "all persons owning real estate," as it is commonly understood, does not carry with it the various requirements of "freeholder" status. *See Bryant v. City of Charleston,* 295 S.C. 408, 411, 368 S.E.2d 899, 900–01 (1988) ("[I]n construing a statute its words must be given their plain and ordinary meaning without resort to subtle or forced construction to limit or expand the statute's operation."). We must respect the General Assembly's use of distinct terms to describe the signatories required for 100% petition versus 75% petition method annexations. *See U.S. v. Barial,* 31 F.3d 216, 218 (4th Cir.1994) ("Where Congress has chosen different language in proximate subsections of the same statute, courts are obligated to give that

choice effect."). For these reasons, we find the circuit court's interpretation of section 5–3–150(3) was an error of law.[5]

Further, while section 5–3–150(3) does not explicitly require notice to each property owner, it is self-evident that each property owner who *signs* the petition has *notice* of the petition. *See Kiriakides v. United Artists Commc'ns, Inc.,* 312 S.C. 271, 275, 440 S.E.2d 364, 366 (1994) ("All rules of statutory construction are subservient to the one that the legislative intent must prevail if it can be reasonably discovered in the language used, and that language must be construed in the light of the intended purpose of the statute."). The petition itself provides notice. Thus, the Town was required to present the petition to the State for signature.

This annexation did not comply with the requirements of the 100% petition method. The State was the presumptive owner of the annexed marshlands and the Town did not provide the State with prior notice of the annexation or obtain the State's signature on the petition.[6] Nevertheless, the State's challenge to the annexation is time-barred.

## 2. State's Motions were Untimely

South Carolina Code section 5–3–270 (2004) provides:

---

**5.** The circuit court asserted that an interpretation giving meaning to the difference in terms would have an absurd result. It reasoned that section 5–3–150(4) defines the lessee in a fee in lieu of taxes agreement as a freeholder, and therefore, a construction that gave effect to the difference in terms would mean the lessee could sign an annexation petition under the 75% petition method but not under the 100% petition method. We decline to speculate about the General Assembly's reasons for choosing to define the lessee as a freeholder. The truly absurd result would be to construe the statute to allow a landowner's property to be annexed without his consent where the annexation purports to have been achieved by a petition of 100% of the landowners.

**6.** We reject Respondents' argument that the notice provided to the Secretary of State, Department of Transportation, and Department of Public Safety pursuant to South Carolina Code section 5–3–90 (2004) satisfied the requirements of the 100% petition method. This notice is given *after* the annexation is complete and serves to advise the agencies of the "new boundaries" of the municipality. It gives the agencies notice of a completed act; it does not satisfy the requirement that an annexing municipality receive consent from all property owners *before* proceeding under the 100% petition method.

When the limits of a municipality are ordered extended, no contest thereabout shall be allowed unless the person interested therein files, within sixty days after the result has been published or declared, with both the clerk of the municipality and the clerk of court of the county in which the municipality is located, a notice of his intention to contest the extension, nor unless, within ninety days from the time the result has been published or declared an action is begun and the original summons and complaint filed with the clerk of court of the county in which the municipality is located.

■ Here, the ordinance was adopted on April 25, 2006, after two readings by the Town Council. Section 5-3-270 clearly provides that the limitation period runs from the publication or declaration of the result of the annexation. Thus, though the Attorney General asserts the State did not learn of the annexation until July 2, 2007, the State's motions—which were filed on July 16, 2007 and October 1, 2007—were untimely. In essence, the State requests that the Court create a "discovery rule" for purposes of the section 5-3-270 limitations period. We decline to do so under the facts presented.[7] On balance, while we recognize the State's lack of actual notice of the annexation, we assign greater importance to the policy of finality of an annexation, with its attendant consequences. We believe this policy is reflected in the abbreviated statute of limitations in section 5-3-270. *See State ex rel. Condon v. City of Columbia,* 339 S.C. 8, 16–21, 528 S.E.2d 408, 412–14 (2000) (holding the State is subject to the statute of limitations when bringing a *quo warranto* action to challenge an annexation); *Hite v. Town of West Columbia,* 220 S.C. 59, 64–66, 66 S.E.2d 427, 429–30 (1951) (holding the sixty-day limit on notice of intent to contest an annexation and ninety-day limit on filing a challenge are not "unreasonable and arbitrary" and are not a denial of due process).

The State argues, however, that its motions should "relate back" to the timely action by the Private Party Appellants.

---

7. There is no evidence of a nefarious motive on the part of the Town in not seeking the State's consent to the annexation. This is a novel issue, and it is clear that the Town, like the circuit court, believed the State's signature was not required for an annexation pursuant to section 5-3-150(3).

We have carefully reviewed the record and find that, under the circumstances of this case, the circuit court did not abuse its discretion in denying the State's motions. *See Intown Properties Mgmt., Inc. v. Wheaton Van Lines, Inc.*, 271 F.3d 164, 168 (4th Cir.2001) ("Thus, assuming that Intown is the real party in interest in the *Transcontinental* action, with standing and claims that have not been waived, we consider whether the district court abused its discretion in refusing to permit Intown to join its insurer's suit as a party plaintiff, not by intervening under Rule 24, but by a combination of Rules 15 and 17[, Fed.R.Civ.P.]"); *Berkeley Electric Coop., Inc. v. Town of Mt. Pleasant*, 302 S.C. 186, 189, 394 S.E.2d 712, 714 (1990) ("In reviewing the granting or denial of a Rule 24(a)(2) motion, we must determine whether the trial judge abused his discretion.").

## IV.

In conclusion, we hold the circuit court properly rejected the Private Party Appellants' attempts to establish standing. We made clear in *St. Andrews Public Service District* that a party seeking to challenge a 100% petition annexation "must assert an infringement of its own proprietary interests or statutory rights." The Private Party Appellants lacked standing, and the circuit court properly dismissed their challenge.

We further hold the circuit court properly determined that the State's annexation challenge was untimely. We conclude, however, that the circuit court erred in finding the State's signature was not required for an annexation by 100% petition. As a property owner, the State's signature was required on the 100% petition. A town or municipality may not undertake a "fast track" annexation without a petition signed by "all persons owning real estate in the area requesting annexation."

**AFFIRMED IN RESULT.**

TOAL, C.J., BEATTY, HEARN, JJ., concur.

PLEICONES, J., concurring in part and dissenting in part in a separate opinion.

Justice PLEICONES: I concur in part and dissent in part.

I agree with the majority's finding that the circuit court properly rejected the Private Party Appellants' theories in support of their standing to challenge the annexation. I also agree with the majority's finding that the Town was required to obtain the State's signature on the petition.I respectfully disagree, however, with the majority's finding that the State's motion to intervene was untimely.

In reviewing the granting or denial of a Rule 24, SCRCP, motion, the Supreme Court must determine whether the trial judge abused his or her discretion. *Berkeley Electric Coop., Inc. v. Mt. Pleasant*, 302 S.C. 186, 394 S.E.2d 712 (1990).

Pursuant to Rule 24, SCRCP, a party may intervene only upon timely application. Our courts have adopted a four-part test for determining timeliness: (1) the time that has passed since the applicant knew or should have known of his or her interest in the suit; (2) the reason for the delay; (3) the stage to which the litigation has progressed; (4) the prejudice the original parties would suffer from granting intervention and the applicant would suffer from denial. *Ex parte Reichlyn*, 310 S.C. 495, 500, 427 S.E.2d 661, 664 (1993); see also *Davis v. Jennings*, 304 S.C. 502, 505, 405 S.E.2d 601, 603 (1991).

The circuit court found the State's action could not relate back to the date of the Private Party Appellants' filing because the Private Party Appellants lacked standing. Specifically, the circuit court found it "had no jurisdiction to begin with," and that the State could not create jurisdiction after the statute of limitations had run. I would find the circuit court erred in making this finding because a party's lack of standing as a real party in interest does not deprive the court of subject matter jurisdiction. See *Bardoon Props., NV v. Eidolon*, 326 S.C. 166, 485 S.E.2d 371 (1997).

Further, the circuit court failed to exercise its discretion by not applying the four-part test to determine whether the motion was timely. See *Callen v. Callen*, 365 S.C. 618, 627, 620 S.E.2d 59, 64 (2005) ("When the trial judge is vested with discretion, but his ruling reveals no discretion was, in fact, exercised, an error of law has occurred.") (quoting *Fontaine v. Peitz*, 291 S.C. 536, 538, 354 S.E.2d 565, 566 (1987)). I would

thus remand the case to the circuit court with instructions to apply the four-part test.