JUSTICE HEARN :
**352 The sole question before us is whether Petitioners Lynne Vicary, Kent Prause, and the South Carolina Coastal Conservation League possessed standing to contest Respondent **353 Town of Awendaw's annexation of land within the Francis Marion National Forest (Ten-Foot Strip). Because the Town allegedly acted nefariously in using a decade-old letter as a petition for annexation, the circuit court found Petitioners had standing and reached the merits. The court of appeals reversed, finding Petitioners lacked standing. Vicary v. Town of Awendaw , 417 S.C. 631, 639, 790 S.E.2d 787, 791 (Ct. App. 2016). We now reverse, holding Petitioners have standing to challenge the annexation of the Ten-Foot Strip.
FACTS
The merits of this appeal concern three parcels of land, serving as links in a chain necessary to satisfy contiguity requirements of annexation. The first link, the Ten-Foot Strip, is a ten-foot wide, 1.25 mile-long parcel of land in the National Forest, which is managed by the United States Forest Service. The second link is property owned by the Mt. Nebo AME Church (Church Tract), and the third link is approximately 360 acres of unimproved real estate surrounded by the National Forest on three sides (Nebo Tract).
In the fall of 2003, the Town sought to annex the Ten-Foot Strip, which required a petition signed by the Forest Service. The Town's representatives sent the Forest Service four letters from November 2003 through February 2004 in an effort to obtain its approval. Through verbal discussions, the Town learned the Forest Service was generally opposed to annexations because of their impact on the Forest Service's ability to conduct controlled fire burns. Additionally, the Forest Service indicated any petition would likely have to come from officials in Washington D.C., a process that could take several years. Thereafter, without receiving written authorization, the Town annexed the Ten-Foot Strip. In doing so, the Town relied on a 1994 letter from a Forest Service representative, stating it had "no objection" to annexing several strips of property within the same vicinity. However, the Town realized the letter may have not clearly related to the proposed annexation, as it noted in a 2003 letter to the Forest Service, "Although we did previously receive a letter from the forest department giving Awendaw the right of way, that documentation is unclear ... We would like to clarify that you will allow the Town to annex the portion of your property that is **354 necessary in order to annex Mt. Nebo AME Church [the Church Tract]."
Despite the 1994 letter being a decade old and ostensibly not involving the same property, in May of 2004, the Town passed the ordinance, purportedly under the 100% petition method, claiming it had obtained a signed petition from the Forest Service. Relying on the annexed Ten-Foot Strip to satisfy contiguity, the Town passed another ordinance annexing the Church Tract after receiving a petition from church representatives.
Five years later, EBC, LLC, the owner of the Nebo Tract, requested the Town annex its property pursuant to the 100% petition method. On October 1, 2009, the Town passed an ordinance annexing the property, and simultaneously rezoned it as a "planned development" to permit residential and commercial development. In annexing the property, the Town relied on the Church Tract and the Ten-Foot Strip to establish contiguity.
*602 Without either component, there would be no contiguity and annexation would be impossible.
In November 2009, Petitioners filed a complaint against the Town and EBC, which they amended in April 2010, alleging, inter alia , the Town lacked authority to annex the Ten-Foot Strip because the Forest Service never submitted a petition for annexation. The Town and EBC moved for partial summary judgment, contending Petitioners lacked standing to challenge the annexation and regardless, the statute of limitations barred their claims. The circuit court denied partial summary judgment on both grounds, finding Petitioners had standing to challenge the Town's annexation of the Ten-Foot Strip under the public importance exception, the Declaratory Judgment Act,[1] and as taxpayers. The Town appealed to the court of appeals, which dismissed as not immediately appealable. Thereafter, the Town sought certiorari from this Court, which we denied on the same ground.
In April 2014, the case proceeded to a bench trial. There, Robert Frank, a registered land surveyor, testified that the 1994 Forest Service letter referred to a different strip of land than the Ten-Foot Strip. In response, Bill Wallace, the Town's **355 administrator, noted the Town had used the letter at least seven times prior to the 2004 annexation of the Ten-Foot Strip, and that he believed the letter incorporated it. Further, Wallace stated that no one representing the Forest Service had ever objected to those annexations. Kent Prause, one of the Petitioners who lived about three to four miles from the Nebo Tract, testified as to the potential future harm caused by developing the property. He noted the unique species of animals, as well as the overall use and enjoyment of the National Forest, which nearby development could threaten. Additionally, development potentially threatened the Forest Service's ability to conduct prescribed fire burnings necessary to maintain the health of the forest.
The circuit court found Petitioners had standing to challenge the annexation, and the statute of limitations did not bar their claims. Reaching the merits, the court concluded the Town's 2004 annexation of the Ten-Foot Strip was void ab initio because it never received a petition from the Forest Service. As a result, the Town's 2009 annexation of the Nebo Tract lacked contiguity and was also void ab initio .
The Town appealed, arguing, inter alia , Petitioners lacked standing to challenge the annexation. The court of appeals agreed, concluding this Court's jurisprudence on standing to challenge annexations pursuant to the 100% petition method afforded standing only to the State and private parties suffering from an actual infringement of their own rights. We granted certiorari to determine whether Petitioners had standing to challenge the Town's annexation of the Ten-Foot Strip.
STANDARD OF REVIEW
The party seeking to establish standing has the burden of proving it. Sea Pines Ass'n for Prot. of Wildlife, Inc. v. S.C. Dep't of Nat. Res. , 345 S.C. 594, 601, 550 S.E.2d 287, 291 (2001). Additionally, the interpretation of a statute is a question of law, which this Court reviews without any particular deference to the circuit court. Catawba Indian Tribe of S.C. v. State , 372 S.C. 519, 524, 642 S.E.2d 751, 753 (2007).
**356 DISCUSSION
Section 5-3-150 of the South Carolina Code sets forth the requirements for an annexation when either all or seventy-five percent of the landowners sign a petition to be annexed. This provision contemplates two approaches-the 75% and 100% methods. Under the 75% method,
[T]he municipality or any resident of it and any person residing in the area to be annexed or owning real property of it may institute and maintain a suit in the court of common pleas, and in that suit the person may challenge and have adjudicated any issue raised in connection with the proposed or completed annexation....
S.C. Code Ann. § 5-3-150(1)(5) (2004). Unlike the 75% method, section 5-3-150(3) does not *603 contain any such language conferring standing. Instead, the provision states,
Notwithstanding the provisions of subsections (1) and (2) of this section, any area or property which is contiguous to a municipality may be annexed to the municipality by filing with the municipal governing body a petition signed by all persons owning real estate in the area requesting annexation. Upon the agreement of the governing body to accept the petition and annex the area, and the enactment of an ordinance declaring the area annexed to the municipality, the annexation is complete. No member of the governing body who owns property or stock in a corporation owning property in the area proposed to be annexed is eligible to vote on the ordinance. This method of annexation is in addition to any other methods authorized by law.
S.C. Code Ann. § 5-3-150(3). This Court has previously addressed standing to challenge the validity of an annexation carried out pursuant to section 5-3-150. See Ex parte State ex rel. Wilson v. Town of Yemassee , 391 S.C. 565, 707 S.E.2d 402 (2011) ; St. Andrews Pub. Serv. Dist. v. City Council of City of Charleston , 349 S.C. 602, 564 S.E.2d 647 (2002).
In St. Andrews , the Court held non-statutory parties lacked standing to challenge a purportedly unauthorized annexation. 349 S.C. at 605, 564 S.E.2d at 648. The St. Andrews Public Service District challenged the City of Charleston's annexation of roadways, which the City used to achieve contiguity with six other parcels of land. Id. at 604, 564 S.E.2d at 648. The **357 District did not have an interest in the property, but it claimed the annexation was void ab initio , thereby conferring standing. Id. Importantly, prior to St. Andrews , a "stranger" to an annexation had standing to challenge acts that were "absolutely void, i.e., not authorized by law ." Quinn v. City of Columbia , 303 S.C. 405, 407, 401 S.E.2d 165, 167 (1991), overruled by St. Andrews , 349 S.C. 602, 564 S.E.2d 647. However, in St. Andrews , the Court ended this exception, finding the better policy was to limit " 'outsider' annexation challenges to those brought by the State 'acting in the public interest.'" St. Andrews , 349 S.C. at 605, 564 S.E.2d at 648. In doing so, the Court held "the only non-statutory party which may challenge a municipal annexation is the State, through a quo warranto action." Id.
Nine years later, in Town of Yemassee , this Court addressed a similar challenge where the petitioners would have had standing under the 75% method, but not under the 100% method. There, the annexed land included marshlands-property held by the State under the public trust doctrine. 391 S.C. at 569, 707 S.E.2d at 404. The town purported to annex the territory pursuant to the 100% petition method after receiving signatures from "all" the landowners, despite lacking one from the State. Id. Residents of the town challenged the annexation, claiming they had standing to contest the method used by the town-either the 100% or 75% method. Id. at 573, 707 S.E.2d at 406. The residents contended they were entitled to present evidence that the town failed to comply with the 100% method in order to show that they had standing pursuant to the 75% method. Id. This Court disagreed, holding despite the defect in the annexation under the 100% method, the residents lacked standing. Specifically, the Court held:
We reject the suggestion that the perceived merits of the underlying claim may influence the standing determination. This basic principle defeats the Private Party Appellants' claim.
The ordinance recites that the annexation was achieved using the 100% petition method. If we went behind that assertion without a proper plaintiff, we would be inviting a sliding scale for standing: the more meritorious a claim appears, the more relaxed the standing requirement would be. We rejected such reasoning when we overruled Quinn v. City of Columbia. See **358 St. Andrews Public Service District, 349 S.C. at 605, 564 S.E.2d at 648 (overruling the Quinn rule that a stranger to an annexation may challenge the annexation if the ordinance is "absolutely void"). Adhering to our precedent, we must determine standing without regard to the merits of the underlying claim.
Id. at 573-74, 707 S.E.2d at 407. While the Court rejected a sliding scale approach to standing, significantly, there was no contention the Town of Yemassee acted nefariously.
Although St. Andrews and Town of Yemassee set forth the general framework for *604 resolving questions of standing pursuant to section 5-3-150, those cases are premised on a good faith attempt by the annexing body to comply with the statutory requirements. As we noted in Town of Yemassee , the 100% method, with less stringent conditions than the 75% method, is "readily understood in light of the requirement that all property owners in the annexed area consent by signing the annexation petition." Id. at 572, 707 S.E.2d at 406 (emphasis in original). Unlike the 75% method, the 100% method does not contain a notice provision or an authorization for third parties to challenge the annexation. Again, this makes sense because the 100% method is a "fast track" scheme available "only when all of the property owners consent." Id. Therefore, the Court's rejection of a "sliding scale" approach to a standing analysis remains good law when there is no allegation of nefarious conduct by the annexing body.
We do not believe the General Assembly intended to preclude standing where there is a credible allegation that the annexing body engaged in deceitful conduct. The contrary view would eviscerate section 5-3-150's requirements for a valid annexation and would allow an annexing body to shield itself from outside challenges by simply claiming it is employing the 100% method when it is not actually doing so. In order to benefit from the limited standing applicable in section 5-3-150, there must be a good faith attempt to comply with its provisions. Because there is only one property owner here-the United States Government-we agree with the circuit court that the Town effectively used the "0% method," which, of course, is not sanctioned as an appropriate method in the Code.
We hold today a party that can demonstrate the annexing body engaged in nefarious conduct in purportedly **359 complying with section 5-3-150 has standing to challenge the annexation. While we carve out an exception to the general framework adopted by St. Andrews and Town of Yemassee , we note a party's burden to demonstrate deceitful conduct in order to have standing is high in light of the presumption of validity bestowed upon annexations. City of Columbia v. Town of Irmo , 316 S.C. 193, 196, 447 S.E.2d 855, 857 (1994) ("There is a presumption in favor of regularity in annexation proceedings.").
The circuit court concluded Petitioners also had standing under the public importance exception, which confers standing to a party "when an issue is of such public importance as to require its resolution for future guidance." ATC S., Inc. v. Charleston Cty. , 380 S.C. 191, 198, 669 S.E.2d 337, 341 (2008). The linchpin of the public importance exception is the need for future guidance. In ascertaining the parameters of such need, while noting that the framework is not inflexible, we have repeatedly cautioned against its routine use. In this respect, our jurisprudence has tended to favor the former, leading to the doctrine's expansive reach. However, we reiterate the need for "future guidance" is the key to transcending a purely private matter and rising to the level of public importance. Id. at 199, 669 S.E.2d at 341. Stated precisely, "For a court to relax general standing rules, the matter of importance must, in the context of the case , be inextricably connected to the public need for court resolution for future guidance." Id.
The need for future guidance is nothing new, as we have previously conferred standing in such contexts. See Baird v. Charleston Cty. , 333 S.C. 519, 531, 511 S.E.2d 69, 75 (1999) (holding the need for future guidance existed where doctors alleged a county committed ultra vires acts when issuing hospital bonds); Ashmore v. Greater Greenville Sewer Dist., 211 S.C. 77, 44 S.E.2d 88 (1947) (noting questions of public interest should be answered where future guidance is needed to resolve the issue before the court). Like the county in Baird and the governmental entity in Ashmore , future guidance is needed to determine the validity of the Town's repeated use of the 1994 letter as a valid petition. Indeed, the town administrator testified that the Town had repeatedly used the 1994 letter without objection and fully intended to use it again in the future if necessary. Therefore, *605 Petitioners have satisfied **360 the "future guidance" prong of the public importance exception.
While this Court has previously declined to utilize the public importance exception in a zoning and annexation dispute, the unique facts present here compel a contrary decision. See ATC S., Inc. , 380 S.C. at 200, 669 S.E.2d at 341 (holding the public importance exception did not apply in a zoning dispute where the "local government followed proper procedure and rezoned a single piece of property for a narrow purpose and the only complaint comes from a nonadjoining landowner which just happens to be a competitor"); Quinn v. City of Columbia , 303 S.C. 405, 407, 401 S.E.2d 165, 167 (1991) (rejecting the notion that challenging an annexation was a matter of sufficient public importance to confer standing), overruled by St. Andrews , 349 S.C. 602, 564 S.E.2d 647. Unlike the local government in ATC, the Town allegedly did not comply with the proper procedure, instead representing to the public that it had received a signed petition from the Forest Service when in fact it had not.
We recognize this Court's jurisprudence has historically carved a narrow avenue to challenge annexations carried out under the 100% method. However, when an annexing body arguably engages in underhanded conduct, it becomes subject to a lawsuit challenging its compliance with the petition method used to carry out the annexation. Accordingly, we REVERSE and remand to the court of appeals to address the Town's remaining arguments.
REVERSED.
BEATTY, C.J., KITTREDGE, FEW and JAMES, JJ., concur.

S.C. Code Ann. Code Ann. § 15-53-30 (2005).