# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

National Trust for Historic Preservation in the United States and the City of Charleston, Respondents/Appellants,

v.

City of North Charleston, Appellant/Respondent.

Appellate Case No. 2019-000728

Appeal From Charleston County
Eugene C. Griffith, Jr., Circuit Court Judge

Opinion No. 5965
Heard October 11, 2022 – Filed February 1, 2023

**AFFIRMED**

Derk Van Raalte, IV, of City of North Charleston Legal Department, and J. Brady Hair, of Law Office of J. Brady Hair, both of North Charleston, for Appellant/Respondent City of North Charleston.

George Trenholm Walker, of Walker Gressette Freeman & Linton, LLC, of Charleston; and Anne Elizabeth Nelson, of National Trust for Historic Preservation, of Washington, D.C., both for Respondent/Appellant National Trust for Historic Preservation in the United States.

Frances Isaac Cantwell, of City of Charleston Legal Department; Julia Parker Copeland, of Hinchey Murray

& Pagliarini, LLC; and Wilbur E. Johnson and Russell Grainger Hines, both of Clement Rivers, LLP, all of Charleston, all for Respondent/Appellant City of Charleston.

———————

**WILLIAMS, C.J.:**  This cross-appeal involves the municipal annexation by the City of North Charleston (North Charleston) of a one-acre tract of real property. The National Trust for Historic Preservation in the United States (the National Trust) and the City of Charleston (Charleston) (collectively, Respondents) appeal the circuit court's order finding Respondents did not have standing to challenge North Charleston's annexation of the acre.  North Charleston also appeals, arguing the circuit court erred in alternatively finding North Charleston did not properly annex the acre pursuant to section 5-3-100 of the South Carolina Code (2004).  We affirm.

## FACTS/PROCEDURAL HISTORY

In 1967, Georgia-Pacific Investment Corporation (Georgia-Pacific) obtained title to approximately 12,293 acres of real property located in Charleston County.  In 1980, Georgia-Pacific conveyed approximately 26.53 acres of that property to the Nature Conservancy.  The deed included the following description of the property:

> Those certain strips or parcels of land, being 100 feet in width and immediately adjacent to the southern right-of-way line of Highway 61, and parallel with said Highway; and being a total of approximately 11,556 feet in length, composed of three strips of land, and being along the northern boundary line of all of the property owned by Grantor along the southern right-of-way line of Highway 61.

The Nature Conservancy immediately conveyed this property to the National Trust (the National Trust Parcel; TMS 301-00-00-017).  The deed conveying the National Trust Parcel did not have a corresponding recorded plat.  In 2005, Charleston annexed the National Trust Parcel.

In 1989, Georgia-Pacific conveyed to Whitfield Construction Company (Whitfield) 2,294.17 acres (the Whitfield Parcel; TMS 301-00-00-005).  In 2009, Whitfield recorded plats illustrating eighteen access easements through the National Trust

Parcel (the Easement Plats), which Georgia-Pacific reserved in the deed it conveyed to the Nature Conservancy.[1]

On September 22, 2017, Whitfield executed a quit claim deed conveying one acre (the Acre; TMS 301-00-00-797) of its larger parcel from Georgia-Pacific to North Charleston. Whitfield recorded a plat of the Acre (the Acre Plat) with the deed on September 22, 2017.[2] The deed described the Acre as part of the Whitfield Parcel.

In October 2017, North Charleston annexed 113 acres (the Runneymede Parcel; TMS 361-00-00-002), without challenge. On December 21, 2017, North Charleston annexed the Acre, pursuant to section 5-3-100, by Ordinance 2017-080 (the Annexation Ordinance). Runneymede and the Acre are separated by Highway 61 and the National Trust Parcel.

In March 2018, Respondents filed a summons and complaint challenging North Charleston's annexation of the Acre, arguing the Acre was not contiguous to North Charleston. North Charleston answered, counterclaimed, and subsequently filed (1) a motion for partial summary judgment, asserting section 5-3-100 does not require contiguity and (2) a motion to dismiss Respondents' complaint for lack of standing. Respondents also filed a motion for summary judgment, arguing the annexation of the Acre was void because (1) the Acre was not contiguous or adjacent to North Charleston and (2) the Acre included a portion of the National Trust Parcel, which was already annexed into Charleston.

The circuit court held a hearing on the motions and issued an order dismissing Respondents' complaint for lack of standing. The court alternatively found that should this court find Respondents had standing to challenge the annexation, North Charleston failed to properly annex the Acre because it was not adjacent to the municipality. All parties filed motions to reconsider pursuant to Rule 59(e), SCRCP, which the circuit court denied. This cross-appeal followed.

---

[1] The Nature Conservancy deed stated "the foregoing conveyance is subject to the reservation by Grantor of certain easements over and across the foregoing real property, . . . [s]aid easements shall be limited to eighteen (18) in number, and each separate easement shall be limited to a total of sixty feet (60') in width."

[2] In mapping the dimensions of the Acre Plat, the surveyor relied on the Easement Plats and the original plat recorded with the deed conveying the Whitfield Parcel. Both the Easement Plats and the Acre Plat have width variations regarding the boundary lines between the National Trust and Whitfield parcels.

## ISSUES ON APPEAL

I. Did the circuit court err in dismissing Respondents' action because it found Charleston and the National Trust lacked standing to challenge North Charleston's annexation of the Acre?

II. Did the circuit court err in alternatively finding that North Charleston failed to lawfully annex the Acre pursuant to section 5-3-100?

## STANDARD OF REVIEW

"A motion to dismiss for lack of standing challenges the court's subject matter jurisdiction." *S.C. Pub. Int. Found. v. Wilson*, 437 S.C. 334, 340, 878 S.E.2d 891, 894 (2022). "Whether subject matter jurisdiction exists is a question of law, which this [c]ourt is free to decide with no particular deference to the circuit court." *Id.* "The party seeking to establish standing has the burden of proving it." *Vicary v. Town of Awendaw*, 425 S.C. 350, 355, 822 S.E.2d 600, 602 (2018).

## LAW/ANALYSIS

## I. STANDING

### A. Statutory Standing

Respondents argue the circuit court erred in dismissing their claims challenging the annexation for lack of standing because the Acre contained a portion—four inches—of the National Trust Parcel, which Charleston annexed in 2005. Therefore, Respondents assert North Charleston's annexation violated their statutory and proprietary rights. Respondents further maintain the circuit court improperly dismissed their claims because a question of fact existed as to whether the Acre included a portion of the National Trust Parcel. We disagree.

Chapter Three of Title Five of the South Carolina Code addresses a municipality's ability to extend its corporate limits and annex additional areas. Chapter Three contains various methods of annexation that a municipality can employ. Specifically, section 5-3-100 provides:

> If the territory proposed to be annexed *belongs entirely* to the municipality seeking its annexation and is adjacent thereto, the territory may be annexed by resolution of the

governing body of the municipality. When the territory proposed to be annexed to the municipality belongs entirely to the county in which the municipality is located and is adjacent thereto, it may be annexed by resolution of the governing body of the municipality and the governing body of the county. Upon the adoption of the resolutions required by this section and the passage of an ordinance to that effect by the municipality, the annexation is complete.

§ 5-3-100 (emphasis added).

In its order, the circuit court found North Charleston did not claim to annex or own any portion of the National Trust Parcel and any deviations in the legal description or plat did not affect Charleston's or the National Trust's ownership rights. The order stated:

No matter what the property description or plat to the Acre might say, it is legally impossible for Whitfield to have conveyed to North Charleston title to any of the [National] Trust's land. Since North Charleston acquired its ownership to the Acre through a Quit Claim rather than a Warranty deed, assuming National Trust is correct that its boundary is exactly 100' from Ashley River Road rather than the 99.7' shown on the Acre plat, the result would not be that North Charleston owns any of National Trust's 100' strip property. As a matter of law, National Trust would retain its full undiminished acreage. The claimed 4" error could only reduce the amount of land obtained by North Charleston from a perfect acre to 99.999% of an acre.

The circuit court therefore found Respondents lacked standing to challenge the annexation because North Charleston only intended to annex the property that it owned. Thus, Respondents did not "have the requisite ownership to challenge the annexation."

We agree with the circuit court. Section 5-3-100 is a method for annexation when the municipality *wholly owns* the property to be annexed. *See id.* ("If the territory proposed to be annexed *belongs entirely* to the municipality seeking its annexation

and is adjacent thereto, the territory may be annexed by resolution of the governing body of the municipality." (emphasis added)).  Here, North Charleston annexed the Acre pursuant to section 5-3-100 via the Annexation Ordinance.  Thus, although there is a four-inch deviation in the proposed plat, we find North Charleston only sought to annex the property within its proprietary rights as the proposed plat relied on the previously recorded Easement Plats in mapping the boundaries.  Further, the legal description in the Annexation Ordinance stated North Charleston sought to annex property "consisting of *approximately* 1.0 acres." (emphasis added).  Even if North Charleston believed it owned the contested four inches, it would be of no consequence.  *See F.C. Enters., Inc. v. Dibble*, 335 S.C. 260, 266, 516 S.E.2d 459, 462 (Ct. App. 1999) ("The courts of South Carolina have traditionally followed the property rule that a purchaser cannot purchase more than his grantor owns."); *Cummings v. Varn*, 307 S.C. 37, 42, 413 S.E.2d 829, 832 (1992) ("No deed can convey an interest which the grantor does not have in the land described in the deed, even though by its terms the deed may purport to do so.").

Accordingly, we hold the circuit court properly found Respondents lacked standing to challenge North Charleston's annexation of the Acre.  *See Glaze v. Grooms*, 324 S.C. 249, 255, 478 S.E.2d 841, 845 (1996) ("The general rule is that a municipality must allege an infringement of its own proprietary interests or statutory rights to establish standing."); *Wilson*, 437 S.C. at 341, 878 S.E.2d at 895 ("If a plaintiff lacks standing, he does not have the right to proceed to the merits of his claim against the defendant.").

### B.  Public Importance Exception

Respondents assert the circuit court erred in finding they did not have standing to challenge the annexation via the public importance exception.  We disagree.

"This Court has consistently acknowledged that even without an allegation of particularized injury, 'standing may be conferred upon a party when an issue is of such public importance as to require its resolution for future guidance.'"  *Wilson*, 437 S.C. at 341, 878 S.E.2d at 895 (quoting *Sloan v. Sanford*, 357 S.C. 431, 434, 593 S.E.2d 470, 472 (2004)).  However, our jurisprudence has also established that public interest standing is rarely utilized within the context of annexation disputes.  *See St. Andrews Pub. Serv. Dist. v. City Council of Charleston*, 349 S.C. 602, 605, 564 S.E.2d 647, 648 (2002) ("[T]he better policy is to limit 'outsider' annexation challenges to those brought by the State 'acting in the public interest.'").  When considering whether a party has standing under the public interest doctrine,

appellate courts must make this determination "*without regard to the merits* of the underlying claim." *Vicary*, 425 S.C. at 358, 822 S.E.2d at 603 (emphasis added).

We find the circuit court did not err in holding Respondents did not have standing under the public interest doctrine. Although we acknowledge our precedent has not yet addressed whether the term "adjacent" within section 5-3-100 requires contiguity, which is specifically required for municipal annexations under section 5-3-150, Respondents have failed to demonstrate that North Charleston's annexation of the Acre incites anything more than a boundary dispute between two municipalities. Further, the absence of a challenge to the annexation by the State is illustrative of the State's position on whether the matter rises to a level of public concern. Respondents have also failed to show any deceitful conduct by North Charleston that would necessitate finding standing under the public interest doctrine. *See Vicary*, 425 S.C. at 358, 822 S.E.2d at 604 ("We do not believe the General Assembly intended to preclude standing where there is a credible allegation that the annexing body engaged in deceitful conduct.").

Based on the foregoing, we find Respondents lack standing to challenge the annexation of the Acre by North Charleston; therefore, further consideration of the matter by this court is foreclosed.[3]

**CONCLUSION**

Accordingly, the circuit court is

**AFFIRMED.**

**THOMAS, J., and LOCKEMY, A.J., concur.**

---

[3] In its appellate brief, North Charleston states that should this court affirm the circuit court's dismissal of Respondents' claims, then consideration of its issue on appeal—the validity of the annexation—is unnecessary. We agree. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding an appellate court need not review remaining issues when its determination of a prior issue is dispositive of the appeal).